MAGENTON, Appellant v. STATE et al., Respondents

((81 N.W.2d 894)

(File No. 9594. Opinion filed March 18, 1957)

514

**E. E. Sullivan,** Rapid City, for Plaintiff and Appellant.

**Phil Saunders,** Atty. Gen., **Benj. D. Mintener,** Asst. Atty. Gen., for Defendants and Respondents.

RENTTO, J. This is a habeas corpus proceeding. The appellant was convicted of manslaughter in the first degree and is now serving his sentence of ten years in the state

penitentiary. He was received there on December 22, 1952. After a hearing on the writ the circuit court ordered it quashed and remanded him to the custody of the warden of the penitentiary. He appeals from that judgment.

The application for the writ claims that at the time of his trial there existed a doubt as to his sanity. With this as a premise he proceeds to urge that because his mental status was not inquired into as provided in SDC 34.2001-34.2004, the court was without jurisdiction to enter the judgment by virtue of which he is imprisoned.

Whether the matter of which applicant complains can properly be presented by habeas corpus is not questioned. Consequently we are not called on to decide that question. The matter is presented on its merits and our decision is on that basis. However, we think it proper to observe that it is questionable whether habeas corpus is a proper remedy. State ex rel. Novak v. Utecht, 203 Minn. 448, 281 N.W. 775; Sedlacek v. Greenholz, 152 Neb. 386, 41 N.W.2d 154; People ex rel. Wiseman v. Nierstheimer, 401 Ill. 260, 81 N.E.2d 900; McMahan v. Hunter, 10 Cir., 150 F.2d 498; Massey v. Moore, 5 Cir., 205 F.2d 665; Ex parte Potts, 89 Okla.Cr. 89, 205 P.2d 522; Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135. See also, Hawie v. State, 121 Miss. 197, 83 So. 158, 10 A.L.R. 213; Mitchell v. State, 179 Miss. 814, 176 So. 743, 121 A.L.R. 267, and 25 Am.Jur., Habeas Corpus, Sec. 84, 1956 Supp., p. 32.

The applicant, now about 62 years of age, was accused of murdering John Lilly in Custer County on November 5, 1952. Counsel was appointed to represent him. Before arraignment in circuit court, pursuant to SDC Supp. 36.0109, his counsel requested that experts be appointed to examine the accused to determine his mental condition. This request did not indicate whether he desired the examination for the purpose of claiming that accused was insane at the time of the commission of the offense, or for the purpose of urging that his present mental condition was such that he could not be tried. Three doctors were appointed—two neuro-psychiatrists and the other a clinical psychologist. They were directed to determine "whether or not Louis P. Magenton is sane or insane within the meaning of the criminal statutes of

the state of South Dakota; * * *". The order appointing them in defining insanity used the right and wrong rule of SDC 13.0201(4).

After examining the accused they filed these written conclusions:

"(1) The examinee, Louis P. Magenton, is found to be legally sane in that his mental activity is not so preverted as to render him incapable of distinguishing right from wrong.

"(2) Further, it is the finding of the board that Louis P. Magenton is afflicted with a condition of organic brain damage superimposed on an immature personality structure resulting in a person whose emotional controls are adequate in well defined or well structured situations but who cannot adapt to meet intense, fluctuating emotional situations as readily as the average person."

At the trial of the criminal case, which lasted three days, the accused was a witness and the psychologist testified in his behalf. One of the defenses relied on by him and submitted to the jury was that he was insane at the time of the commission of the offense. The jury rejected this contention and found him guilty. Before sentence the accused and his counsel stated in open court that he had no legal cause to show why the judgment of the court should not be pronounced. At all stages of the trial the accused was represented by counsel. Not until the institution of this proceeding on October 25, 1955, was it suggested to any court that there was a doubt as to the sanity of the accused at the time of trial.

SDC 34.2002 provides:

"When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arises as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court from the body of the county in cases where sufficient jurors duly summoned have not appeared.

"The trial of the indictment or information or the pronouncing of judgment, as the case may be,

> must be suspended until the question of insanity is determined by the verdict of the jury."

Under this code section it is not necessary that the accused be actually insane to be entitled to a hearing on the issue of his present sanity. He must be accorded that protection if the facts are sufficient to raise only a doubt as to his sanity. The doubt referred to is one that must arise in the mind of the trial judge, rather than in the mind of some other person. People v. Perry, 14 Cal.2d 387, 94 P.2d 559, 124 A.L.R. 1123. It must be a real doubt arising from facts and circumstances of a substantial character. Bingham v. State, 82 Okl.Cr. 5, 165 P.2d 646.

In applying this statute the test of the accused's sanity is not the right and wrong rule above referred to. That concerns sanity in the sense of criminal responsibility for an act. We are here concerned with sanity for the purpose of present triability. Sanity in this regard is determined by appraising the present ability of the accused to so understand the nature and purpose of the proceedings taken against him as to be able to conduct his own defense in a rational manner. United States v. Chisholm, C.C., 149 F. 284; People v. Gomez, 41 Cal.2d 150, 258 P.2d 825; 14 Am.Jur., Criminal Law, Sec. 45; 44 C.J.S., Insane Persons, § 127; In re Smith, 25 N.M. 48, 176 P. 819, 3 A.L.R. 94. The statute does not say how this matter is to be brought to the attention of the court, but that omission is unimportant. It may be done on formal application or where no application is made, it made be done by the court on its own motion. And if the trial judge has a real doubt as to the sanity of the accused it is his duty to order the inquiry, even though not requested. Brewer v. Hudspeth, 166 Kan. 263, 200 P.2d 312. However, because the court knows, or has reason to believe, that the accused is claiming that he was insane at the time the offense was committed does not of itself make necessary an inquiry into his present sanity. Weiland v. State, 58 Okl.Cr. 108, 50 P.2d 741. Nor is it logical to urge that instructing on insanity as a defense necessarily indicates a doubt in the mind of the trial judge concerning the present sanity of the accused.

Whenever counsel for the accused or for the

state become possessed of knowledge of accused's lack of mental capacity to comprehend his situation or to properly make his defense, it becomes their duty to promptly bring this matter to the attention of the court. State v. Smith, 173 Kan. 813, 252 P.2d 922. The fact that counsel for the accused does not request a trial of this issue is significant. It is a circumstance which a trial judge is entitled to consider in deciding whether he should order the inquiry. It is also of persuasive significance when the trial court's failure to order an inquiry on its own motion is under review. Bingham v. State, supra.

Whether a trial court on its own initiative should order such inquiry is a matter addressed to its sound judicial discretion, and its decision will not be disturbed in the absence of an abuse of that discretion. Bingham v. State, supra; State v. Collins, 162 Kan. 34, 174 P.2d 126; State v. Smith, supra; 23 C.J.S., Criminal Law, § 940(b); 142 A.L.R. 966. The accused has the burden in this regard, 3 Am.Jur., Appeal and Error, Sec. 960, 1956 Supp., p. 86; 5 C.J.S., Appeal and Error, § 1584, p. 476, and a strong showing is required to establish an abuse thereof. People v. Gomez, supra. Ordinarily sanity is presumed and where it is urged that the trial court had, or should have had, a doubt as to the present sanity of the accused, the court's failure to order the inquiry on its own motion is aided by that presumption.

Our statutes, unlike those of many jurisdictions, make provision for an inquiry into the present sanity of the accused at only two points in the trial proceedings—when the information is called for trial or when the defendant is brought up for judgment. Bingham v. State, supra. Since the reporter's transcript of the trial proceedings is not a part of the record, it is difficult to know what facts and circumstances bearing on the present sanity of the accused were before the trial court when the information was called for trial. However, we will assume that when that occurred the trial court had examined the conclusions of the expert witnesses above set out and the psychologist's report.

We have carefully studied these documents. The report is concerned with the results of intelligence and per-

sonality tests taken by the accused. It was relied on by the experts in arriving at their conclusions. It is clear from these that he has suffered organic brain damage and that his personality is restricted, but there is nothing to indicate that because of these he was unable to understand his situation or to make a proper defense. People v. Aparicio, 38 Cal.2d 565, 241 P.2d 221; Johnson v. State, 73 Okl.Cr. 370, 121 P.2d 625. Surely, if the court or counsel for the accused had entertained even a slight doubt concerning the present sanity of the accused, these experts would have been asked for their opinion thereon. Also, it must be borne in mind that the court had the benefit of observing the accused. Under these circumstances we are satisfied that the court did not abuse its discretion in not holding an inquiry into the present sanity of the accused when the information was called for trial. Acuff v. State, Okl.Cr., 283 P.2d 856.

 In addition to the facts and circumstances above set out, when the accused was brought up for sentence, the court had before it the testimony of the accused and had observed him as a witness. Also it had heard the testimony of the psychologist. These are not in the record. In the absence of a showing to the contrary it must be presumed that the discretionary powers of the trial court have been wisely exercised. State v. Rash, 27 S.D. 185, 130 N.W. 91; Sutton v. State, 163 Neb. 524, 80 N.W.2d 475. There is in this record a lengthy statement made by the accused to the officers two or three days after his arrest. It details matters concerning himself and his recent relations with the deceased, including the circumstances surrounding the homicide. There is nothing in this exhibit that gives rise to a doubt concerning his sanity at the time of the trial. Rather, it indicates a mental ability fully aware of his predicament and able to make a strong defense.

At the hearing on the writ the applicant gave testimony concerned largely with an injury suffered by him as a serviceman in World War I. A psychiatrist who examined him about ten months before the hearing on the writ also testified. The materiality of this showing is doubtful. But, be that as it may, in our view it fails to indicate any doubt as to his sanity at the time the criminal case was tried. On

this record we cannot say, as a matter of law, that the trial court had, or should have had, any real doubt concerning the applicant's sanity at the time he was tried.

██ The humane purposes which the Legislature intended to serve by adopting SDC 34.2002 are well known and we have no desire to depart from them. However, the Legislature has also declared that these humane purposes are involved only if there is a doubt as to the sanity of the accused. If applicant is now insane, SDC Supp. 13.4724 provides for his release from punishment and authorizes his removal to an appropriate institution for hospitalization and treatment.

Affirmed.

All the Judges concur.