THE STATE OF OHIO, APPELLEE, *v.* DEBOARD, APPELLANT.

(No. 154—Decided July 23, 1962.)

Mr. *Richard L. Davis*, prosecuting attorney, for appellee.
Mr. *Paul L. Westerfield*, for appellant.

RADCLIFF, P. J.   The defendant was indicted by the September 1961 Grand Jury of Highland County, Ohio, for violation of Section 2901.23 of the Revised Code.   This section defines the crime of maliciously shooting with intent to kill or wound.   The activity which resulted in the indictment took place on August 8, 1961, in the city of Greenfield, Highland County, Ohio.   Trial was had to a jury, resulting in a finding of not guilty of maliciously shooting but guilty of assault with a dangerous weapon contrary to the provisions of Section 2901.241 of the Revised Code, a lesser included offense.   The verdict of the jury was journalized, and after the overruling of a motion for a new trial the defendant was sentenced to the Ohio Penitentiary, but the execution of sentence was stayed and the defendant was released on bond pending the outcome of this appeal.

It is necessary to recite many of the facts so that the questions passed on in this opinion will be brought into proper prospective.   The defendant, his wife and son live at 1050½ Mirabeau Avenue, Greenfield, Ohio.   The Elliott home and the Deboard home occupy the same lot, with the rear of the homes just a few feet apart.   For some period of time prior to August 8, 1961, Mrs. Elliott and the defendant had been in controversy over a sewer line and a water line.   Mrs. Elliott was using the same water line as the defendant, and at times when the discussion and controversy grew heated the defendant would turn off Mrs. Elliott's water.   Mrs. Elliott had requested permission to put a "T" in the defendant's water line so that a meter could be placed on her end of the line and the water for her home would not be subject to the whim and control of the defendant.

The defendant refused unless Mrs. Elliott would pay him the cost of the entire water line, some forty odd dollars. Mrs. Elliott, disturbed no doubt by the lack of co-operation, decided that she would retaliate. It seems that the defendant had tapped into a sewer line that had been installed by Mrs. Elliott, and on the evening of August 8, a plumber, Mrs. Elliott's son and various other members of the Elliott family were gathered in the backyard in the process of disconnecting the defendant's drain from the the Elliott's sewer line. As in all arguments there are two sides. We are certainly not prepared to say upon which side the greater fault lay. About 8:00 p. m. the defendant, seeing the activity in the yard and being told what was happening, called William Clay, an officer or night policeman of the city of Greenfield, to the scene and discussion was had as to the situation. Officer Clay told them it was not under the jurisdiction of the Police Department but under the jurisdiction of the City Water & Sewer Department and that the Elliotts and Deboards should maintain the status quo until contacting Mr. Hamilton at the City Hall next morning. Mr. Clay then left. A great deal of activity then transpired between the neighbors over their differences. It is not part of the criminal charge here but certainly a prelude to it. It involved threats and counter threats, the possible exhibiting of a shotgun or rifle, and reached a climax in general bedlam. Officer William Clay was again summoned, this time by the Elliotts. Mr. Clay returned to the scene of this septic squabble about 45 minutes after his first call. By this time it was beginning to get quite dark. Officer Clay engaged in a general parley with the defendant, his wife and son, and members of the Elliott family. This discussion, instead of soothing the tempers of the parties, apparently had the opposite effect. The defendant made some strong observations about the Elliotts, Mr. Clay and the situation generally. He was finally told that he was being disorderly, this by Officer Clay, and that he would have to come downtown. Here we come to the parting of the ways as to what occurred. The defendant stated that he was desirous of avoiding an argument of any kind and that shortly after Officer Clay returned to the scene he went upstairs into the living quarters of his home and stretched out on the bed to relax; that while relaxing he heard steps on the stairs leading up to the kitchen of his home and some words of remon-

strance on the part of his wife; that he did not know who was coming up or the purpose of the visit; that he thought someone was going to injure his wife or invade his home without right; that he reached for a pistol in a drawer in the bedroom; that while examining it to see if it was loaded it accidentally discharged; that he did not know who was in the living quarters of his home at the time the shot was fired; and that he could see no one and did not intend to shoot at anyone, but was merely examining the pistol. He then went out into the kitchen and by the light coming in from the back porch discovered Officer William Clay. He then ordered Officer Clay out of his home and directed him down the stairs with his pistol pointed toward him as Officer Clay was attempting to draw on him. As they went down the stairs Deboard ordered Mr. Clay not to return unless he had a warrant. He also cast some aspersions upon Mr. Clay's ancestory and intelligence.

The other version of the events of the evening is, that the defendant and Officer William Clay were engaged in a heated exchange of words and when Officer Clay told defendant he was going to have to take him downtown the defendant bolted up the stairs of his home with Mr. Clay in hot pursuit, across the porch and into the kitchen. There, the officer said, he saw or heard a movement in the hall into which the defendant had gone and he stepped back and immediately upon his stepping back there was a shot fired from the hall and that had the officer not stepped back he would have been hit. The bullet crashed into a metal china cupboard in the kitchen where the slug was found later that evening. (This was within two feet of where the officer was standing.) Then the defendant ordered Mr. Clay down the stairs and out of the house. He followed the officer with the gun pointed toward him as he descended the stairs. The officer left the scene, proceeded to his cruiser, drove around the block, returned and parked in front of the house. Clay summoned help by radio. Soon a sizeable posse of police officers of all the various governmental units surrounded the house. The defendant left the house under the cover of darkness while Officer Clay was sitting in front of the house in his cruiser. He made his way a short distance and watched the activity of the officers in and around his home. Later he made his way to a barn in the country, and slept all night there. The next morning he called

the Mayor of Greenfield and asked for instructions as to what he should do, and finally he came in and gave himself up.

The defendant has listed 13 assignments of error, but in reality only three questions are raised; consequently, in the interest of conserving paper, we will paraphrase the assignments of error to include only the actual issues to be determined herein.

1. Did the injection into the testimony of a prior offense of identical nature with the present charge, which occurred some 25 years previously, prevent the defendant from having a fair trial?

2. Did the giving of additional instructions to the jury which included the offense charged in the indictment and also three lesser included offenses on two separate and distinct occasions amount to repetition which had an undue influence upon the jury to the prejudice of the defendant?

3. Was the instruction of the trial judge as to the defense of self defense adequate and proper under the circumstances of this case?

We will dispose of these questions in the order in which they are recited above. The evidence of prior misconduct and subsequent conviction therefor was injected into this case by the testimony of the last witness on behalf of the state of Ohio in its case in chief. This witness was the Sheriff of Highland County who transported the defendant from the city of Greenfield to the County Jail in Hillsboro, Ohio, after a preliminary hearing before the County Judge in Greenfield wherein the defendant was bound over to the Grand Jury. The defendant volunteered the information that he had shot 7 or 8 men back in Kentucky prior to moving to Ohio. It was a typical example of puffing on the part of a person charged with an offense, who does not yet realize the gravity of the situation in which he has placed himself. The attorney for the defense immediately objected and asked for a mistrial. His objection was overruled and the sheriff was permitted to elaborate to some extent as to what the defendant told him. The motion to withdraw a juror and declare a mistrial was again made and overruled. The attorney for the defendant proceeded to cross-examine vigorously upon this information. At the conclusion of the sheriff's testimony, the state of Ohio rested and the defendant was called as the first witness in his own behalf. During defendant's testimony in

chief, counsel asked him in detail concerning the incident in Kentucky where it was developed that he had shot a deputy sheriff who was seeking to serve him with process, and that he spent some 19 months in the reformatory at LaGrange, Kentucky. The prosecuting attorney cross-examined somewhat on this testimony and then offered state's Exhibit No. 3 which was a form issued by the Bureau of Criminal Identification and Investigation of the state of Ohio, London, Ohio, showing that Charles Deboard, on October 15, 1936, had entered the Kentucky State Reformatory at LaGrange, Kentucky, having been found guilty of maliciously shooting and wounding with intent to kill a deputy sheriff. His sentence was for two years. The attorney for the defendant *did not* object to the introduction of this exhibit. The motion to withdraw a juror was again interposed at the conclusion of the defendant's case and again overruled by the trial judge.

The next time the question arose was in closing argument by the prosecutor, wherein he mentioned the conviction and similarity of the offenses of 1936 and 1961. The attorney for the defendant objected again and asked for a mistrial; again this was overruled. The trial judge at that time very carefully instructed the jury in the following words:

"The jury will not consider the past record as bearing upon the guilt or innocence of this man as to the charge for which he now stands charged with. The only bearing upon his intent you can consider it in arriving at the conclusion as to what his intent might have been in this case but not to provide you with one of the elements of the crime which he stands charged here."

(The garbled language which permeates the record present here is attributable to a young, enthusiastic but inexperienced court reporter. We have known the trial judge herein too long not to realize that he is articulate and well versed in the law.)

The language in such charge has long been used with approval by the courts of this state. See *State* v. *Shively*, 172 Ohio St., 128, and Section 2945.59, Revised Code, and the annotations thereunder. See, also, 15 Ohio Jurisprudence (2d), 518 *et seq.*, Section 349 *et seq.* Finally, the issue was disposed of by the trial judge in his general charge to the jury as follows:

"Now during the trial there was received into evidence testimony and an exhibit pertaining to a prior conviction of the

defendant. The only purpose of admitting the prior conviction is bearing upon his, the defendant's credibility and nothing else. I believe that the court charged you at the time this was admitted that you might consider that as weighing upon the intent element for the defendant in this particular charge. However, the evidence discloses and I charge you as a matter of law, and I am taking the responsibility you see, for this, that the time was too far removed from the prior conviction and the alleged crime in August 1961, and that you will not consider the prior conviction as bearing in any way upon his intent on or about the 8th day of August, 1961. The only purpose it is admitted for is to consider that along with the other factors in determining what credibility you will give to his [defendant's] testimony.''

This indicates the thought and consideration with which this issue was treated by the trial judge and the length to which he did go to preserve the defendant's right to a fair trial. This testimony might well have been admitted under the authority of Section 2945.59 of the Revised Code for the purpose of showing intent even though some 25 years had elapsed between the two offenses. You just don't go around shooting police officers every year and remain outside penal institutions. In this case the trial judge exercised caution and further limited the evidence as applying only to the question of the credibility of the witness. The defendant also placed in issue his character and reputation by calling witnesses solely for that purpose. This was done on his own initiative and, after having been placed in issue, the previous conviction could well have been used to rebut and overcome any evidence as to good character or excellence of reputation.

We have examined very carefully this question and can conclude that the defendant's rights were protected and that he did have a fair trial and that the first assignment of error is not well taken.

The second assignment of error goes to the question of repetition in the charge of the court of the elements of the principal offense here charged, i. e., violation of Section 2901.23 of the Revised Code; and the elements of the lesser included offenses, being assault with a dangerous weapon, in violation of Section 2901.241 of the Revised Code, the offense the jury found

to have been committed by the defendant; assault, in violation of Section 2901.25 of the Revised Code; and pointing firearms, in violation of Section 3773.04 of the Revised Code. There is no question in our minds that under the facts in this case it was proper to charge upon these three lesser included offenses. The trial judge obeyed strictly the mandate and purport of the decision of the Supreme Court of Ohio in *Bandy* v. *State*, 102 Ohio St., 384. He had the duty to charge upon the offenses and he did so. Our personal view as to charging on every and all of the lesser included offenses has been stated in *State* v. *Patterson*, 172 Ohio St., 319.

The court in its general charge discussed all the elements of the principal offense and the lesser included offenses. The jury retired at 3:10 p. m. and reported at 4:00 p. m. that it was deadlocked. The trial judge pointed out that there was no reason to believe that another jury of 12 after hearing the evidence would be in any better position to decide the facts and suggested that they return and deliberate further. He then recited the elements of the principal offense and the lesser included offenses and closed with the statement that if those elements were not established beyond a reasonable doubt in any of the charges then the jury would have to find defendant not guilty. The jury retired again at 4:10 p. m. and returned at 4:30 p. m. and reported that they had not yet reached a verdict. Then the court instructed them further by going over the elements of the principal offense and the lesser included offenses as follows:

"Now, I am going to do something we don't ordinarily do read you the elements of the various crimes that you have a possibility of considering so you * * *. Now, the principal crime includes these material elements. That the defendant shot at William Clay, that defendant shot at William Clay with a gun loaded with powder and bullet, that defendant did so maliciously, that defendant did so intending to kill or wound William Clay and the venue element, it was done in this county on or about August 8, 1961. Now, the lesser included crimes is one that is provided by statute. No person shall assault another with a dangerous weapon or instrument and the elements of that are that defendant assaulted William Clay, that he did so with a dangerous weapon, that he did so in Highland County on or about August 8, 1961. The next is assault and that contains the

elements of that defendant assaulted William Clay, that he did so in Highland County. I defined assault for you. All those include the element of intent and malice. There is one that does not include malice, that is pointing and discharging a firearm and under that one the material elements are that defendant intentionally without malice discharged a firearm pointed at William Clay and that he did so in Highland County on or about August 8, 1961. Now, of course the elements need to be proved beyond a reasonable doubt. In anyone of the crimes if any of them have not been proved in one but in another then that particular crime is present. If the material elements are not proved in any of them then there is no crime, so I am going to ask that since I have read these to you again that you consider the situation because we have been through three days here. * * * There is a number of possible verdicts here and there is no reason to believe you could not arrive at a verdict on either one charge or not guilty to all of them. So I'll permit you to deliberate once again."

The attorney for the defendant objected on the ground that he had discussed the elements of the lesser included offenses in too great a detail. The court then continued:

"A great deal more time has been spent to you about the lesser offenses. The fact that there are several possible crimes here and it takes more time to discuss those than it does a not guilty verdict that doesn't mean to indicate that you should find the defendant guilty nor does it mean that he should not be found not guilty. That is for you to determine but at least the court would believe that you could find him guilty of any one or not guilty of all. So if you will deliberate some more."

The jury retired at 4:45 p. m. the second time and returned a verdict of not guilty of shooting with intent to kill but guilty of assault with a dangerous weapon. That verdict was returned about 5:20 p. m.

We feel that the trial judge was justified in charging on the three lesser included offenses, in view of the facts in this case. Not only was he justified but under a duty so to charge. Had he not so charged it would have been tantamount to a directed verdict of not guilty of the lesser included offenses upon which he did not charge. (See *State* v. *Patterson, supra* [172 Ohio St., 319].)

The last explanation made by the trial judge to the jury as to the question of guilt or innocence was certainly appropriate. It is always more time consuming to state postives than it is to state a negative. In each instance where the principal offense and the lesser included offenses were discussed the trial judge always ended up with the usual proviso to the effect that if the jury failed to find beyond a reasonable doubt any of the elements of the offenses then it must and should find the defendant not guilty, not only of the principal offense but of the lesser included offenses. There was no request for special instructions before argument by counsel for either the state of Ohio or the defendant. We feel that under the circumstances the charge was not repetitious, it was certainly not erroneous as to content and therefore could not be prejudicial. The second assignment of error is not well taken.

The third assignment of error deals with the portion of the court's general charge as to self-defense. That the defense of self-defense would be a factor in the case is indicated in the opening statement of the attorney for the defendant. In fact, defendant's testimony was to the effect that for ten to fifteen minutes prior to the discharge of the gun he was relaxing on his own bed on the second floor of his home away from the quarrelsome neighbors and the enthusiastic Officer William Clay. This contention is not corroborated in any way. In fact, the testimony of the defendant's two witnesses to the events leading up to the discharge of the weapon, namely, his wife and son, coincides with the testimony given by the prosecuting witness, William Clay, and that of the other witnesses presented by the state of Ohio. The court's charge on self defense and the statements of law therein were proper. The trial judge even charged on the question of disorderly conduct and discussed the right of the officer to arrest without a warrant where a misdemeanor has been committed or is being committed in his presence. The attorney for the defendant then requested the trial judge to charge the jury that they should determine whether the defendant's conduct was disorderly or not and whether he was committing a misdemeanor. To this the court replied that it would not so instruct, but the court did make this further statement concerning self defense to the jury:

"If you should find the defendant had the right under my

instructions to use self defense and he acted in self defense then of course you would find him not guilty."

There certainly was no duty to charge on this request, as the defendant has never been charged with disorderly conduct. It was inconsistent with defendant's testimony, according to his story that he was relaxing on his bed upstairs some 40 feet from the quarrel. We can resist no longer permitting *dicta* to enter here by saying that under the evidence in this case there was no duty upon the court to charge upon the defense of self-defense at all. The third assignment of error is not well taken.

We have carefully examined every facet of this case and feel that the trial was free of any unfairness and the record from prejudicial error. The judgment herein appealed from is affirmed and this cause is remanded to the Common Pleas Court of Highland County for vacation of the recognizance and execution of sentence.

*Judgment affirmed and cause remanded.*

COLLIER and BROWN, JJ., concur.