STATE of South Dakota, Plaintiff and Respondent,

v.

Jerry VASSAR, Defendant and Appellant.

No. 12455.

Supreme Court of South Dakota.

Argued March 19, 1979.

Decided May 31, 1979.

William J. Janklow, Atty. Gen., Judith A. Atkinson, Asst. Atty. Gen., Pierre, B. Elizabeth Godtland Ganje, Asst. Atty. Gen., Aberdeen, on brief for plaintiff and respondent.

Richard D. Hurd, Sioux Falls, on brief, for defendant and appellant.

FOSHEIM, Justice.

Defendant was indicted by a grand jury on four felony counts. Count I charged him with murder, Count II attempted murder, Count III arson in the first degree and Count IV with murder while engaged in the commission of a felony. The court dismissed Count II. The jury returned a verdict of not guilty as to Count I and guilty as to Counts III and IV. Defendant appeals from his convictions based on these verdicts. We affirm.

Defendant and one Jane Hurtgen had been keeping company for approximately three years prior to June 24, 1977. They spent most of that day together. Miss Hurtgen went to work at 4:00 p. m. Defendant had given her $40.00 for safekeeping. At 10:00 that evening, defendant picked Miss Hurtgen up at work. He had been drinking, and they argued about the $40.00, which Miss Hurtgen refused to return. When they arrived at the home, which she occupied with her mother and sister, Miss Hurtgen fled into the house.

Defendant then went to the Sioux Falls Police Station, arriving there at 11:30. He asked the police to help him get back the $40.00 from Miss Hurtgen. The officers told him it was a civil matter, and that he and his girlfriend would have to either settle it between themselves, or take it to court. Defendant said they would be sorry, and that he would take care of the matter himself.

The State introduced evidence that in the early morning hours of June 25, 1977, defendant started a fire at Jane Hurtgen's residence. Jane was not home, but her mother and sister were then in the house. The evidence indicated that defendant realized the home was occupied when he started

the fire. Jane Hurtgen's mother and sister were both injured. Her mother, Roberta Hurtgen, died several days later from smoke inhalation.

On June 28, 1977, the Sioux Falls police interrogated Jerry Vassar concerning the fire. He denied involvement. On June 30, 1977, while in custody for another matter, the defendant was asked more questions about this fire. He again denied any involvement. At the request of the police he took a polygraph examination, which indicated that he was lying. After being advised of the examination result, defendant agreed to make a statement. He then signed a confession in which he admitted starting the fire. This statement was taken at 12:16 a. m., July 1, 1977. Defendant signed another statement admitting the crime at 10:02 p. m., July 7, 1977.

Defendant tried to escape several times while at the Minnehaha County jail. As a consequence he was placed in an isolation cell. He was shackled and chained from approximately 6:30 p. m. January 13, 1978, until the morning of January 16, 1978.

Prior to trial, defendant requested that a licensed psychologist be employed at public expense to determine his mental competency at the time of his confessions. He also requested a jury trial on the question of his competency to stand trial. The denial of these motions and whether the court erred in not instructing on the lesser included offenses of manslaughter in the first and second degrees constitute the issues on appeal.

■ It is defendant's position that the trial court, in denying his request for a court-appointed psychologist at county expense, deprived him of his right to effective assistance of counsel, equal protection and trial by jury pursuant to amendment VI of the United States Constitution [1] and article

1. Amendment VI of the United States Constitution reads as follows:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been

previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defense.

VI, § 7 of the South Dakota Constitution [2]. The right of the accused to have compulsory process served to obtain witnesses in his behalf is fundamental.[3] We agree, however, with the conclusion of United States District Court for the District of South Dakota expressed in *Utsler v. Erickson*, 315 F.Supp. 480 (D.S.D.1970), that no decision of the United States Supreme Court or of the Eighth Circuit Court of Appeals goes so far as to accord a defendant the absolute right to engage expert witnesses of his own choice at public expense to perform examinations and testify at trial. Where government expense is involved a discretionary standard prevails. *Feguer v. United States*, 302 F.2d 214 (8th Cir. 1962).

The discretionary standard is also settled law in South Dakota.

SDCL 19–6–1, which now appears as SDCL 19–15–9, reads as follows:

Whenever, in a civil or criminal proceeding, issues arise upon which the court deems expert evidence is desirable, the court, on its own motion, or on the request of either the state or the defendant in a criminal proceeding, or of any party in a civil proceeding, may appoint one or more experts, not exceeding three on each issue, to testify at the trial.

In *State v. Geelan*, 80 S.D. 135, 120 N.W.2d 533 (1963), we held this statute does not create an absolute right to the appointment of an expert witness. It merely permits the appointment of such witnesses in a proper case, and whether the appointment is made is committed to the discretion of the trial court. In *Utsler v. State*, 84 S.D. 360, 171 N.W.2d 739 (1969) we reaffirmed that an indigent defendant in addition to counsel is not entitled at public expense to "the full paraphernalia of defense" in preparation for a claimed defense. We later cautioned, however, in *State v. Murphy*, 89

S.D.486, 234 N.W.2d 54 (1975) that a narrow construction of SDCL 19–6–1 could unjustly deny court-appointed expert witnesses when such are essential to an adequate defense.

In *State v. Sahlie*, 245 N.W.2d 476 (S.D. 1976), we summarized the above and similar cases and again concluded that the trial court has discretion to determine when expert witnesses are essential to an adequate defense. While considerable weight should be accorded to the application, the trial court is not in any way bound by it. The court should make an independent evaluation, taking into consideration all relevant factors. If the application is found to be reasonable, it should be granted, but if it is found to be frivolous, unreasonable, and unnecessary for an adequate defense, or without underlying factual support, it should be denied. As we said in *State v. Sahlie*, supra, the trial court in either event should specify on the record the granting or denial of the application together with the reasons therefor.

The court ruled as follows on defendant's motion:

In this particular case, just the allegation of the State's Attorney at the time of the suppression hearing, . . . that the defendant has not been tested within the school system for some eight years or thereabouts, I forget the exact number, is not adequate reason for this Court to appoint a psychologist and I do deny the defendant's motion in regard thereto.

The record reveals that after making its ruling the trial court invited defendant to fortify his showing in this regard, but he failed to do so.

In *State v. Sahlie*, supra, we suggested these guidelines in determining when court-appointed experts are essential to an adequate defense:

2. Article VI, § 7 of the South Dakota Constitution reads as follows:

In all criminal prosecutions the accused shall have the right to defend in person and by counsel; to demand the nature and cause the accusation against him; to have a copy thereof; to meet the witnesses against him face to face; to have compulsory process

served for obtaining witnesses in his behalf, and to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

3. The sixth amendment right to have compulsory process issued is applicable to the states. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

Initially, the request must be made in good faith. The request must be reasonable in all respects. The request must be timely and must set forth specific reasons which seem to make such services needed or necessary to the defendant. The request must specify that the defendant is financially unable to obtain the required service himself and that such services would otherwise be justifiably obtained were the defendant financially able.

245 N.W.2d at 480.

■ Defendant's request does not set forth sufficient specific reasons why the desired services are necessary. We cannot say, therefore, as a matter of law, that the trial court abused its discretion in denying the motion.

The next assignment of error claims the trial court wrongfully denied defendant's request to instruct the jury that the lesser offenses of manslaughter in the first degree and manslaughter in the second degree are included in the crime of murder as charged in Count I of the indictment.

■ It is not clear as to precisely how the refused instruction is claimed to have been prejudicial. We conclude that the refusal was error but since the defendant was acquitted on Count I it was harmless as to double jeopardy and we discern no other tenable theory for prejudicial error. SDCL 23–45–23 provides:

The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment or information, or of an attempt to commit the offense charged.

Under SDCL 22–16–1:

Homicide is the killing of one human being by another. It is either:

(1) Murder;

(2) Manslaughter;

(3) Excusable homicide; or,

(4) Justifiable homicide.

Murder and manslaughter in the first and second degrees are defined by statute.[4] Whenever a crime is distinguished into degrees, the jury, if it convicts the accused, must find the degree of the crime of which he is guilty. SDCL 23–45–22.

■ Manslaughter in the second degree is an offense included in both the charge of murder, State v. Hubbard, 20 S.D. 148, 104 N.W. 1120 (1905), and manslaughter in the first degree, State v. Painter, 70 S.D. 277, 17 N.W.2d 12 (1944). In State v. Stumbaugh, 28 S.D. 50, 132 N.W. 666 (1911), we indicated that convictions for either manslaughter in the first degree or manslaughter in the second degree are appropriate under an indictment charging the offense of murder. See also State v. Violett, 79 S.D. 292, 111 N.W.2d 598 (1961), and State v. Godlasky, 47 S.D. 36, 195 N.W. 832 (1923). Our opinion in State v. Zobel, 81 S.D. 260, 134 N.W.2d 101 (1965) cert. denied, 382 U.S. 833, 86 S.Ct. 74, 15 L.Ed.2d 76 (1965), discussed this subject in detail and noted that both State v. Hubbard and State v. Painter, supra, declare it the duty of the court to instruct as to included offenses and that failure to do so is error.[5] In State v. Grimes, 237 N.W.2d 900 (S.D.1976), we quoted with approval this language from the Ohio Court of Appeals in State v. Deboard, 116 Ohio App. 108, 187 N.E.2d 83 (1962):

We feel that the trial judge was justified in charging on the three lesser included offenses, in view of the facts in this case. Not only was he justified but under a duty so to charge. Had he not so charged it would have been tantamount to a directed verdict of not guilty of the lesser included offenses upon which he did not charge.

The question as we see it is whether the refusal of the trial court to instruct on the lesser included offenses could subject defendant to double jeopardy. While murder and manslaughter are separate crimes, the

---

**4.** SDCL 22–16–4 (defines murder); SDCL 22–16–5 (defines manslaughter in the first degree); and SDCL 22–16–20 (defines manslaughter in the second degree).

**5.** See also State v. Crofutt, 76 S.D. 77, 72 N.W.2d 435 (1955).

jury could not find the defendant guilty of murder and also find him guilty of either manslaughter in the first degree or manslaughter in the second degree. Since they are the same for purposes of barring consecutive sentences at a single trial, they necessarily are also the same for purposes of barring successive prosecutions under the double jeopardy clause of the fifth amendment applicable to the states through the fourteenth amendment to the United States Constitution. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). As stated in the *Deboard* case, the refusal of the trial court to instruct was tantamount to a directed verdict of not guilty of the lesser included offenses. It follows that the murder acquittal can be plead in bar to any subsequent indictment for manslaughter. *State v. Stumbaugh*, supra. Consequently the court's refusal to instruct as to the lesser included offense of manslaughter in the first and second degree was not prejudicial to the defendant.

Defendant claims the court erred in denying his motion for a jury determination of his mental competency pursuant to SDCL 23–38–2 and in denying his request that he be examined by a competent psychiatrist to determine his competency to stand trial. This statute provides:

> When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arises as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court from the body of the county in cases where sufficient jurors duly summoned have not appeared.

This court had occasion to discuss SDCL 23–38–2 in *Magenton v. State*, 76 S.D. 512, 517, 81 N.W.2d 894, 897 (1957).

> Under this code section it is not necessary that the accused be actually insane to be entitled to a hearing on the issue of his present sanity. He must be accorded that protection if the facts are sufficient

to raise only a doubt as to his sanity. The doubt referred to is one that must arise in the mind of the trial judge, rather than in the mind of some other person. *People v. Perry*, 14 Cal.2d 387, 94 P.2d 559, 124 A.L.R. 1123. It must be a real doubt arising from facts and circumstances of a substantial character. *Bingham v. State*, 82 Okl.Cr. 5, 165 P.2d 646.

We made it clear in *Magenton*, supra, that in applying this statute we are concerned with sanity only for the purpose of determining present triability. Sanity in this regard is determined by appraising the present ability of the accused to so understand the nature and purpose of the proceedings taken against him as to be able to conduct his own defense in a rational manner, and to cooperate with counsel to the end that any available defense may be interposed.[6]

Defendant essentially claims that his lower than average IQ, as evidenced by tests administered while he was in school more than eight years before the trial, his being chained and placed in isolation following escape attempts, plus his claim that he had no recollection of starting the fire, is sufficient evidence to raise a real doubt as to his sanity.

A hearing was held on defendant's motion for a judicial determination of his mental competency. When asked by his counsel at that hearing if there had been a change in his attitude since he had been placed in isolation he replied, "Now I won't try to escape no more." When his counsel inquired whether the time spent in isolation had any other effect on him he replied, "No I don't think so." When cross-examined by counsel for the State, defendant stated that he understood the purpose of that hearing. He also said he understood the questions asked of him and other witnesses and the answers given. The trial court had occasion to observe defendant during this hearing.

■ The capacity of defendant to recall events is an important factor in determining his mental ability to assist counsel in his

---

6. 44 C.J.S. Insane Persons § 127 (1944), and 21 Am.Jur.2d Criminal Law § 63 (1965).

defense. *State v. Owen*, 133 Ohio St. 96, 12 N.E.2d 144, 114 A.L.R. 686 (1937). Loss of memory, however, regarding the facts of the event for which the accused is charged does not, standing alone, necessarily prevent him from being able to assist his counsel effectively or preclude mental competency as a matter of law. *Bradley v. Preston,* 263 F.Supp. 283 (D.D.C.1967), cert. denied 390 U.S. 990, 88 S.Ct. 1188, 19 L.Ed.2d 1296 (1968); *Jackson v. State*, 548 S.W.2d 685 (Tex.Crim.App.1977); *State v. Severns,* 184 Kan. 213, 336 P.2d 447 (1959).

In determining whether there is a real doubt as to the defendant's sanity the court must appraise his claimed loss of memory and his present abilities as enumerated in *State v. Magenton,* supra, together with any other facts and circumstances indicating whether the defendant can have a fair trial. *Wilson v. United States*, 129 U.S. App.D.C. 107, 391 F.2d 460 (1968); *State v. McClendon,* 103 Ariz. 105, 437 P.2d 421, 46 A.L.R.3d 537 (1968); *Reagon v. State*, 253 Ind. 143, 251 N.E.2d 829 (1969), cert. denied 397 U.S. 1042, 90 S.Ct. 1364, 25 L.Ed.2d 653 (1970).

There is a presumption of sanity, and the burden is on the accused to show that the trial court abused its discretion in refusing a competency trial. *State v. Violett,* supra; *Magenton v. State,* supra. Based on the record in this case we cannot say, as a matter of law, that the trial court should have had any substantial doubt concerning defendant's sanity at the time he was tried.

The judgment is affirmed.

All the Justices concur.