**UNITED STATES of America**

**v.**

**Calvin CLARK.**

**Crim. No. 67–111.**

United States District Court
W. D. Pennsylvania.

Dec. 31, 1968.

Gustave Diamond, U. S. Atty., by Lawrence G. Zurawsky, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

James P. McKenna, Jr., and Byrd R. Brown, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

Calvin Clark was convicted by a jury of two counts of an indictment charging him with knowingly facilitating the transportation and concealment of 23.8 grams of heroin unlawfully imported into the United States in violation of § 174 of Title 21 U.S.C.; and for knowingly purchasing that narcotic drug other than in or from the original stamped package, in violation of § 4704(a) of Title 26 U.S.C., contrary to § 7237 of Title 26 U.S.C.

At the conclusion of all the evidence, a motion for judgment of acquittal was denied. The defendant timely filed a motion in arrest of judgment, for judgment of acquittal or for a new trial.[1] The defendant contends that the evidence was insufficient to justify the conviction; that the evidence did not establish that the glassine packets from which a portion of the contents was taken and analyzed as heroin, and the glassine packets on which the defendant's fingerprints were developed, were the same glassine packets found by the police officers on March 15, 1967; and that the corpus delicti was not proved. In support of his motion for a new trial he contends that admissions made by the defendant to police officers were inadmissible.[2]

In our opinion, the motions should be denied.

From the evidence, it appears that on March 15, 1967, at about 9:00 o'clock in the evening, two Pittsburgh police officers, Seifer and Williams, were in a police car proceeding south on Dahlem Street in the East Liberty Section of Pittsburgh (T., pp. 19–20, 63–64). The area was covered with a recent snow (T., pp. 26, 31, 70, 426–427). At a point where Railroad Street meets Dahlem, the officers saw the defendant walking on Railroad Street toward Dahlem carrying a bag. Railroad Street is not frequented by pedestrians, and is in an area in which considerable littering had occurred (T., pp. 24, 53, 66). Officer Williams testified that the defendant appeared to be moving and then stopped (T., p. 67).

In these circumstances, the officers decided to "check out" the defendant (T., pp. 24, 67). The car was turned around and driven into Railroad Street, where they again observed the defendant running toward the car without the bag (T., pp. 24–26, 46–47, 54, 66–68). The officers stopped the defendant and asked him what had happened to the bag. The defendant stated that the bag contained

---

1. Six reasons in support of the motion are set forth. Defendant requested leave to file additional reasons within seven days of the receipt of the transcript of testimony. The transcript was filed on August 21, 1968; no additional reasons were filed.

2. The second reason alleging failure of the Government to comply with Title 18 U.S. C. § 3500 was withdrawn at oral argument.

sandwiches which he had purchased for his wife, and that he had thrown it away (T., pp. 26–27, 67–69). He also said it contained garbage (T., pp. 36, 50). The officers attempted to find the bag with the aid of the defendant who pointed out the areas where he thought he had thrown it. The search proved to be fruitless, after which the defendant was frisked. Although the officers suspected that the defendant had violated the littering ordinance, since they had failed to find the bag, they did not formally arrest the defendant (T., pp. 27–29, 47–49, 56–57, 69, 194). The defendant then left the area and the officers drove away.

About 10 minutes later the officers returned to the area and undertook another search for the bag. The only footprints in the snow on Railroad Street were those of the officers and the defendant made during the previous encounter (T., pp. 27–28, 31–34, 72–73). By following defendant's footprints in the snow, Officer Seifer found a brown bag, on which there was no snow, lying inside the circle of an abandoned tire (T., pp. 34–35, 58, 73, 75). In the bag were two waxed cartons for milk or juice, each of which contained a transparent plastic bag enclosing numerous glassine packets containing white powder, later identified as heroin (T., pp. 35, 76). The officers took these items to Police Station No. 5 (T., pp. 37, 77). There they counted 347 glassine packets—171 packets in one plastic bag and 176 in the other (T., pp. 38, 78). All of the containers were devoid of tax stamps. The desk sergeant at No. 5 Police Station, Raymond Persetic, verified the count (T., pp. 116–117, 120). After receiving the material, he placed it in the drawer of the desk (T., pp. 118, 120).

The next day Officer Diggs was handed a package from the desk of No. 5 Police Station and took it to the Allegheny County Crime Laboratory. There it was received by James Jerpe who tagged it

and two plastic bags within it as case number 7281. Mr. Jerpe noted that the plastic bags inside the package contained a large number of small glassine packets containing a white powder; he placed the package in a locked repository (T., pp. 141–143, 147–149, 151–152).

The next day, March 17, 1968, this package was removed from the repository by Mr. Jerpe, Herbert Schuetzman, a chemist, and Charles McInerney, the Director; the latter two counted 176 packets in one bag and 171 in the other (T., pp. 149, 355–356). The chemist selected seven packets at random from each bag (T., p. 365) and analysis revealed that the contents were 60% heroin hydrochloride (T., p. 358).

In our opinion, the corpus delicti was established by the foregoing evidence.

On March 20, 1967, Inspector McDaniel of the Pittsburgh Police obtained 17 glassine packets from case number 7281 (T., p. 184), 12 of which he sent to the FBI Latent Fingerprint Section, Washington, D. C.,[3] and 5 of which he took to the Pittsburgh Police Identification Section (T., pp. 158–160).

On March 23, 1967, Schuetzman, the chemist, delivered the glassine packets from case number 7281 to federal narcotics agent Mattingly and Inspector McDaniel who together emptied the packets into a bottle prepared by the chemist (Ex. 20; T., pp. 161–163, 359–361).

On March 27, 1967, Inspector McDaniel sent the remaining glassine packets, 308 in number,[4] to the FBI Latent Fingerprint Section, which packets were subsequently returned to McDaniel in the same receptacle (T., pp. 163, 176–178, 182–183, 241–243).

Julius C. Jones, a FBI fingerprint examiner, developed four latent fingerprints of value on three of the 308 glassine packets received from Inspector McDaniel (T., pp. 241–243). In the expert's opinion, these four latent prints

3. On these 12 packets, one latent fingerprint was developed (T., p. 241); they were returned to McDaniel and kept in his safe (T., pp. 160–161).

4. Of the 347 glassine packets, 8 were not accounted for by the Inspector (T., pp. 182–183, 242).

were those of the defendant (T., pp. 296–297).

Officers Seifer and Williams made positive in-court identification of the defendant as being the person on Railroad Street on March 15, 1967, who they observed with the bag and questioned as to where he had discarded it (T., pp. 21, 65). They observed the defendant at close quarters illuminated by the dome light of their patrol car when the defendant put his head through the window space (T., pp. 31, 71). Later, they individually identified photographs of the defendant as the man they saw with the bag and questioned on Railroad Street (T., pp. 39–42, 194–195). To be considered was evidence that the defendant attempted to mislead and deceive the officers who saw him in possession of the bag containing the packets of heroin and attempted to conceal it. The fact that the defendant had an identical twin brother was a circumstance for the jury to take into consideration with all the other evidence pertaining to identification.

■ Viewing the evidence in the light most favorable to the prosecution, as required, Foston v. United States, 389 F.2d 86, 89 (8th Cir. 1968), in our opinion, the direct and circumstantial evidence adduced was sufficient to sustain the jury's verdict of guilt beyond a reasonable doubt. Specifically, it appears that the evidence, direct and circumstantial, was sufficient to establish the identity of the material found on March 15, 1967 to be the same as that submitted to the Allegheny County Crime Laboratory and analyzed by the chemist as 60% heroin. Also, that the evidence, direct and circumstantial, was sufficient to establish that the glassine packets found by the police on March 15, 1967 had been in possession of the defendant, and that they were the identical packets submitted to Jones, the fingerprint expert, who found defendant's fingerprints on three of them.

■ The defendant complains that since *Miranda* warnings were not given to him by the police when they stopped and asked him questions on Railroad Street that his answers were inadmissible. In our opinion *Miranda* warnings were unnecessary. Defendant was seen at night carrying a bag on a deserted street where littering was prevalent. The circumstances were suspicious. The questions were of a routine nature to be expected of police officers in "on-the-scene" questioning in such circumstances. No in-custody interrogation in an inherently coercive environment such as a police station or police car was involved. Indeed, it appears that the defendant voluntarily confronted the police and readily answered their questions in the "fact-finding" process. No formal arrest was made; the defendant was not deprived of his freedom in any significant way. Cf. United States v. Gibson, 392 F.2d 373 (4th Cir. 1968); Allen v. United States, 390 F.2d 476 (D.C. Cir. 1968).

■ As the Court stated in Miranda, 384 U.S. 436 at p. 477, 86 S.Ct. 1602 at p. 1629, 16 L.Ed.2d 694:

> "Our decision is not intended to hamper the traditional function of police officers in investigating crime. * * * General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding."

■■ The visual observations made by the police clearly provided a reasonable basis for suspicion. The strange actions of the defendant and his bizarre answers to the police questions provided probable cause to search for the bag. There is no right of a citizen, constitutional or otherwise, which immunizes him from being stopped on the street by a policeman under suspicious circumstances. Probable cause then existing, the packets of heroin subsequently found nearby in a paper bag not covered with snow were properly admissible in evidence.

Although not specified in his post-trial motion, the defendant's brief asserts that the statutory "requirement to purchase

tax stamps for heroin violates the privilege against self-incrimination" and is unconstitutional, citing Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), and Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); and that "the presumption of guilt of importation of heroin founded upon evidence of mere possession has no basis in fact", citing United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

In our opinion, the guilty verdicts should not be set aside for either of these reasons.

■ As to the second reason, Judge Van Dusen stated in a narcotic case entitled United States v. Turner, 782 F.2d 404 (3d Cir. 12/10/68), at fn. 5:

"The presumption in 21 U.S.C. § 174 was held valid in Yee Hem v. United States, 268 U.S. 178, 185 (1925), and repeatedly thereafter in the Circuits. E. g., United States v. Armone, 363 F.2d 385, 391–392 (2nd Cir.), cert. den. Viscardi v. United States, 385 U.S. 957, 87 S.Ct. 391, 17 L.Ed.2d 303 (1966); Bradford v. United States, 271 F.2d 58, 61 (9th Cir. 1959); United States v. Brown, 207 F.2d 310, 312 (7th Cir. 1953); Dear Check Quong v. United States, 82 U.S. App.D.C. 8, 160 F.2d 251, 252 (1947). The constitutionality of 26 U.S.C. § 4704(a) was upheld in Goode v. United States, 80 U.S.App.D.C. 67, 149 F.2d 377 (1947)."

See also, Morgan v. United States, 391 F.2d 237 (9th Cir. 1968).

■ As to the first reason, the defendant was convicted of knowingly facilitating the transportation and concealment of heroin unlawfully imported in violation of § 174, Title 21 U.S.C.; and of purchasing heroin other than in the original stamped package in violation of § 4704(a), Title 26 U.S.C. The authority of Congress under the commerce clause to prohibit the importation of narcotic drugs, and to make the transportation and concealment thereof with knowledge of their unlawful importation a criminal offense, is not open to doubt. Yee Hem v. United States, 268 U.S. 178, 183, 45 S.Ct. 470, 69 L.Ed. 904 (1925). The provisions embodied in § 4704(a) were held constitutional as being within the power of Congress to lay taxes "and have no necessary connection with any requirement of the Act which may be subject to reasonable disputation." Alston v. United States, 274 U.S. 289, 294, 47 S.Ct. 634, 635, 71 L.Ed. 1052 (1927), reiterated in Nigro v. United States, 276 U.S. 332 at p. 339, 48 S.Ct. 388 (1928). These provisions have no necessary connection with the sections of the Act requiring registration. Likewise, the provisions of § 174 have no necessary connection with the registration requirements of the Act.

However, since *Marchetti* and *Grosso*, supra, convictions under tax statutes which require registration as part of the process of collection may be subject to re-examination under the Fifth Amendment. Notwithstanding, the prohibition of importation of addictive narcotics and the enforcement of the provisions designed for effective collection of the excise taxes imposed thereon are so imperative that it would be unseemly for a District Court to strike down these statutes as unconstitutional at this late date. If the Fifth Amendment has been violated, the Supreme Court will so declare. Up to the present time, other distinguished courts have held the tax statutes pertaining to narcotic drugs constitutional and not in violation of the Fifth Amendment. Haynes v. United States, 339 F.2d 30 (5th Cir. 1964); Palmer v. United States, 332 F.2d 788 (9th Cir. 1964). Cf. Leary v. United States, 392 F.2d 220 (5th Cir. 1968); Ramseur v. United States, 285 F.Supp. 1020 (E.D.Tenn. 1968); United States v. Young, 284 F. Supp. 1008 (E.D.Tenn. 1968); United States v. Reyes, 280 F.Supp. 267 (S.D. N.Y.1968). In these decisions, we concur.

An appropriate order will be entered denying the motion in arrest of judgment, for judgment of acquittal, or for a new trial.