UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Anthony LICAUSI, Defendant-Appellant.

No. 26741.

United States Court of Appeals
Fifth Circuit.

June 30, 1969.

Rehearing Denied Sept. 5, 1969.

Michael A. Lipsky, Miami, Fla., for appellant.

William A. Meadows, Jr., U. S. Atty., Theodore Klein, Asst. U. S. Atty., Miami, Fla., for appellee.

Before WISDOM and MORGAN, Circuit Judges, and DAVIS,* Judge of the United States Court of Claims.

WISDOM, Circuit Judge:

Joseph Licausi, the defendant-appellant, was convicted under an indictment, based on 18 U.S.C. § 2113(c), charging him with receiving, possessing, and concealing $490 in five-dollar bills "knowing the same to have been stolen from the National Bank of North America, Long Island, New York, on October 4, 1967". On that date the bank was robbed of $25,450 in traveler's checks and $29,352 in cash. The cash stolen from the bank included $500 in "bait money"—100 five-dollar bills, the serial numbers of which had been recorded.

The undisputed evidence showed that on January 22, 1968, Licausi purchased a cashier's check for $3000 from the First National Bank of Boynton Beach, Florida. The cash he used to purchase the check included $490 of the stolen bait money, 98 of the 100 five-dollar bills.

Licausi's defense rests on the ground that the United States failed to show that he knew the money had been stolen from the National Bank of North America.

## I.

Licausi contends that the district court erred in failing to grant his motion for a mistrial.

During the trial one of the Government's witnesses, George Allmon, testified that on the evening of the same day as the robbery, he visited his former wife's home at Delray Beach, Florida. Shortly thereafter, so he testified, Joseph Licausi visited Mrs. Allmon. Allmon, upon leaving the house, walked along a dirt road through a wooded area. There he saw paper burning in a small fire near a puddle of rainwater. Another witness, James Benjamin, testified

---

* Sitting by designation.

that on the same dirt road, several days after October 4, 1967, he noticed scorched traveler's checks near a puddle of water. The checks had markings indicating that they had been issued by a bank in Long Island. Benjamin turned over the checks, amounting to about $7000, to a police officer. The numbers on the checks were identical to the numbers on certain checks taken in the robbery October 4, 1967.

The Government prosecutor stated in open court that he would connect the evidence as to the checks with the case against Licausi. The trial judge ruled, however, that the Government had failed to show a connection between the evidence as to the checks and the offense with which Licausi was charged. Accordingly, the trial judge granted the defendant's motion to strike this evidence and he instructed the jury to disregard the testimony relating to the checks. At this point the defendant moved for a mistrial. The court denied the motion.

▪ Had we been in the trial judge's place, we would have ruled that the evidence as to the checks was admissible. The checks and the bait money came from the same bank robbery 1500 miles away. Allmon saw the fire on the evening of the robbery, around the corner from where Licausi had been visiting. His testimony and Benjamin's testimony were relevant to the issue of Licausi's guilty knowledge. The probative weight of the evidence was a question for the jury to decide. See Vaccaro v. United States, 5 Cir. 1961, 296 F.2d 500. Indeed, the trial judge's ruling excluding the evidence was a windfall to the defendant.

▪ To the extent that any of the evidence relating to the checks was not admissible, the trial judge corrected the alleged error. We hold that the court's denial of a mistrial was not a reversible error.

## II.

Licausi argues that the trial court erred in allowing the Government to present evidence of his impecunious condition before the robbery and his spending after the robbery because this evidence was irrelevant to the sole issue at trial—whether he *knew* that the money was stolen. Licausi contends that evidence of relative affluence after the robbery would have been relevant if he had been charged with robbery or if there had been some question whether he actually possessed the stolen money. Neither issue, however, was before the trial court. Licausi was not charged with robbery, and, admittedly, he paid for a cashier's check with stolen money.

We feel that Licausi cannot complain that he was prejudiced by the Government's evidence of his relative affluence after the robbery. Initially, the Government, without objection, introduced evidence that Licausi bought a $10,000 house in June 1967 for $500 cash, a $8,300 first mortgage, and a $1,200 second mortgage. The Government witnesses testified that on October 9, 1967, five days after the robbery, Licausi offered to pay off the second mortgage for $800 cash. Licausi's lawyer did not object to the introduction of this evidence.

Later the Government offered proof of Licausi's spending after the robbery by showing the purchase of a Cadillac automobile on October 18, 1967, for $6,400 ($1,900 cash and a $4,500 loan) and the purchase of a boat for $1,700 ($1,000 cash). The Government also attempted to introduce Licausi's savings accounts and checking accounts. Licausi's lawyer objected to this evidence and the district court excluded it.

▪ Licausi then offered into evidence records of the very same savings accounts and checking accounts which, upon *his* objection, the trial judge had excluded. He also offered some of the records pertaining to the loan on the Cadillac. The trial judge therefore ruled—correctly—that Licausi had "opened the door" to proof of his relative affluence after the robbery and on cross-examination allowed the Government to submit all its evidence on this issue. On

these facts we think Licausi cannot complain that he was prejudiced by the Government's evidence of his relative affluence after the robbery.

### III.

Contrary to appellant's argument, it was not necessary for the Government to prove that the defendant knew that the money in question was stolen from a particular bank. The evidence as to the particular bank was necessary, for purposes of federal jurisdiction only, to show that the deposits of the bank were insured by the Federal Deposit Insurance Corporation.

The receipt of property stolen from interstate commerce is analogous to the offense charged in this case. See 18 U.S.C. § 659. In cases dealing with Section 659, courts hold that "one who knowingly receives stolen chattels must do so at the peril of their having been stolen while in course of interstate transportation". Clark v. United States, 5 Cir. 1954, 213 F.2d 63. It is not necessary to establish that the defendant knew that the goods were in interstate commerce when they were stolen. United States v. Allegrucci, 3 Cir. 1958, 258 F. 2d 70. Here, to prove its case, the Government did not have to prove that Licausi knew that the stolen money came from the National Bank of North America.

### IV.

The defendant also argues that the lapse of three and a half months between the robbery and the defendant's possession of the stolen money precluded as a matter of law the propriety of the trial judge's instructions as "recently stolen property". "Recently" is a relative term. The possession of 98 of 100 of the recorded five-dollar bills is a circumstance to be considered in weighing the inference. The court properly charged the jury: "Whether property may be considered as 'recently stolen' depends upon the nature of the property and all of the facts and circumstances shown by the evi-

dence in the case. The longer the period of time since the theft, the more doubtful becomes the inference which may reasonably be drawn from unexplained possession."

In the circumstances this case presents, the instruction was not reversible error.

The judgment is affirmed.