UNITED STATES of America

v.

James HAMILTON et al.

Appeal of Donald KIBLER.

No. 71-1522.

United States Court of Appeals, Third Circuit.

Argued Nov. 12, 1971.

Decided March 13, 1972.

---

Byrd R. Brown, Pittsburgh, Pa., for appellants.

Henry G. Barr, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before VAN DUSEN, JAMES ROSEN, Circuit Judges, and BECKER, District Judge.

OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

Appellant, Donald Kibler, and co-defendants James Hamilton and Wilma

Harding, were indicted on June 18, 1969 for violations of 18 U.S.C. § 2113(c) and 18 U.S.C. § 2. The five count indictment charged them with receiving, possessing and disposing of five checks taken from the Westinghouse Electric A.B. Building Employees Federal Credit Union No. 406 with the intent to steal and purloin them.

Wilma Harding originally pleaded not guilty, but then changed her plea to guilty. On November 13, 1970, she was sentenced to five concurrent sentences of six months each. The sentences of imprisonment were suspended and she was placed on probation for three years.

Hamilton and Kibler, who were tried jointly, were arraigned on August 7, 1970, when both pleaded not guilty. The trial date was then set for February 11, 1971, but on motion of Kibler's attorney, the trial was continued twice, and carried until September 16, 1971. At that time, Hamilton moved for a continuance which was denied. His counsel explained that an office fire during the prior weekend had destroyed information which could have been used to impeach Wilma Harding, the Government's principal witness against Kibler and Hamilton. Kibler did not join in Hamilton's motion for a continuance.

Russell F. Drennen, the treasurer of the Credit Union,[1] testified that on the morning of February 3, 1969, he discovered that the desk belonging to the Credit Union had been broken into. The desk was "chewed open, the lock was broke, splintered."[2] A preliminary inventory at that time did not reveal anything missing. Three days later, however, when he inspected his check book in response to an inquiry by the Mellon National Bank concerning a certain check, he did discover 42 missing checks. Mr. Drennen identified the checks named in the indictment as being among the 42 missing checks.

Wilma Harding testified that on the morning of February 27, 1969, James Hamilton asked her help in cashing certain checks. She agreed to help him and proceeded to drive with Hamilton and Kibler to five different Mellon National branches in order to negotiate the checks. She testified that it was Kibler who drove the car in which the three were occupants, that it was he who filled out the checks to Susan Watson as payee,[3] and that it was he who furnished her with false identification[4] in the name of Susan Watson. Wilma Harding cashed four of the checks, giving all of the proceeds to Hamilton.[5] He, in turn, gave half of the money to Kibler. As she was attempting to cash the fifth check, she was arrested.

Kibler testified in his own behalf. He denied that he knew Wilma Harding at the time of the alleged criminal acts, and further denied any involvement with the five checks.

On September 22, 1970 after five days of trial, the jury returned guilty verdicts against appellant Kibler and codefendant Hamilton on all five counts.[6] Kibler filed a timely Rule 33 motion for a new trial on September 24, 1970, challenging, *inter alia*, the sufficiency of the evidence to support his conviction. In addition, the appellant's motion purported to reserve "the right to file addition-

---

1. Mr. Drennen was the Credit Union Treasurer as a "sideline" to his position as Cost Clerk for Westinghouse. The Credit Union, which serviced only Westinghouse Electric's employees in the same building as the Credit Union, was open about an hour each day and did not have a full-time treasurer. Tr. p. 19.

2. Tr. p. 20.

3. In addition to the testimony of Wilma Harding, the government also produced a fingerprint expert who testified that a latent fingerprint of appellant Kibler appeared on exhibit 2, one of the five checks.

4. The identification, government exhibit 10, was a driver's license renewal.

5. Mrs. Harding testified that in return for the cash she gave to Hamilton, she received only $20 and a "walking suit." Tr. p. 57.

6. Hamilton did not appeal.

**98**

al and supplemental reasons for a new trial."[7]

After a hearing on the Rule 33 motion, the trial judge held that there was no justification for a new trial on the ground of insufficient evidence and that the reservation clause was ineffective in extending the time for filing reasons beyond the seven day period provided in Rule 33. Accordingly, the motion was denied. Appellant was subsequently sentenced to imprisonment for two consecutive one-year periods and was placed on probation for a period of five years.

■ Kibler contends that there was insufficient evidence to support the guilty verdict. He claims that the government did not meet its burden of proving beyond a reasonable doubt that (1) the checks were taken from the Credit Union by burglary or larceny in violation of § 2113(c) and that (2) the appellant knew that the property involved was the subject matter of a particular theft.

The appellant concedes that the evidence in this case was sufficient to establish embezzlement or taking under false pretenses, but argues that it was insufficient to establish larceny.[8]

Appellant Kibler advances the argument that the three day interval between the breaking into the desk and the discovery of the missing checks required the jury to conclude that an embezzlement occurred after the breaking and entering and therefore the evidence does not support a finding of larceny. We

disagree that the facts mandate a conclusion of embezzlement. Drennen, who was a part-time treasurer, spent about an hour each day working for the Credit Union. From the part-time nature of his position the jury could reasonably conclude that when he discovered the desk had been broken into, he did not make a thorough examination to see whether anything had been stolen. When the bank called him, he did inspect the check book and discovered the missing checks at that time.

■ The record discloses that the evidence provided sufficient basis for the jury's conclusion that the checks exhibited at trial had been taken from the Credit Union by larceny. "[E]vidence need not be inconsistent with every conclusion save that of guilt, provided it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt." United States v. Giuliano, 263 F.2d 582, 584 (3d Cir. 1959), United States v. Boyle, 402 F.2d 757 (3d Cir. 1968) cert. denied 394 U.S. 934, 89 S.Ct. 1207, 22 L.Ed.2d 464 (1969). The circumstantial nature of the evidence does not alter this conclusion. United States v. Boyle, *supra.* Theft, like most other facts, can be proven circumstantially. United States v. Allegrucci, 258 F.2d 70, 76 (3d Cir. 1958). Since circumstantial and testimonial evidence are indistinguishable insofar as the jury's fact-finding function is concerned, all that is to be required of the jury is that it weigh all of the evidence, direct or circumstantial, against the standard of reasonable doubt. Hol-

---

7. Rule 33: The court on motion of a defendant may grant a new trial to him if required in the interest of justice. . . . A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, . . . *A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.* (Emphasis supplied.)

8. For a discussion as to whether § 2113 (c) requires proof of larceny, see Le Masters v. United States, 378 F.2d 262 (9th Cir. 1967), United States v. Rogers, 289 F.2d 433 (4th Cir. 1961) ; *Contra,* Thaggard v. United States, 354 F.2d 735 (5th Cir. 1965). Cf. reference to the statute in United States v. McKenzie, 414 F.2d 808 at p. 811 (3d Cir. 1969), cert. denied, sub nom. Anthony v. United States, 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970).

land v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

Kibler contends that the government produced insufficient evidence to establish that the accused knew that the property was the subject matter of a particular theft on February 3, 1971. Appellant misinterprets § 2113(c). The government did not have to prove that Kibler knew of any specific theft, but only that he had knowledge the checks were stolen from a Credit Union. United States v. Licausi, 413 F.2d 1118 (5th Cir. 1969), cert. denied 396 U.S. 1006, 90 S.Ct. 560, 24 L.Ed.2d 498 (1970).[9] United States v. Allegrucci, *supra.*

There was ample evidence for the jury to conclude that Kibler knew the checks were stolen from a credit union.[10] First, "Westinghouse Electric A.B. Building Employees Federal Credit Union No. 406" was imprinted on each of the checks introduced into evidence. Second, an inference of guilty knowledge may be drawn from the unexplained possession of recently stolen property. United States v. Allegrucci, 299 F.2d 811 (3d Cir. 1962), Hale v. United States, 410 F.2d 147 (5th Cir. 1969) cert. denied 396 U.S. 902, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969). What constitutes "recently stolen property" is not susceptible to precise definition. In *Allegrucci*, a six week gap between shipment of some goods and their unexplained possession by the defendant was not sufficient to place the goods outside the category of recently stolen property as a matter of law. The 24 day interval in our case does not as a matter of law remove it from the classification of re-

cently stolen property. Since the jury returned a verdict of guilty the government is entitled to have us view the evidence in the light most favorable to it. In evaluating the evidence, we give the prosecution the benefit of all legitimate inferences which might reasonably be drawn from the proven facts. United States v. Moraites et al., 456 F.2d 435 (Filed February 9, 1972). United States v. De Cavalcante, 440 F.2d 1264 (3d Cir. 1971), United States v. Clark, 294 F.Supp. 1108 (W.D.Pa.1968), aff'd 425 F.2d 827 (3d Cir. 1970), cert. denied 400 U.S. 820, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). The evidence was clearly sufficient to support the jury's finding of guilt beyond a reasonable doubt.

Kibler's motion for a new trial included a clause which purported to reserve to him "the right to file additional and supplemental reasons for a new trial when the notes of testimony taken at the trial have been transcribed and a copy thereof made available to counsel for defendant." He advances the argument that the trial judge erred in denying him the right to argue additional grounds under the omnibus reservation clause. We disagree. Rule 33 provides that ". . . the reasons . . . in support of . . . a motion for new trial must be filed within the seven-day period . . . unless there has been an order entered within that period extending the time." United States v. Newman, 456 F.2d 668 filed February 1972.[11] Kibler did not apply to the District Court for an extension of time within the required period. The "reservation" clause in his motion did not state any

---

9. "The evidence as to a particular bank was necessary, for purposes of federal jurisdiction only, to show that the deposits of the bank were insured by the Federal Deposit Insurance Corporation." 413 F. 2d at p. 1121.

10. Mr. Drennen's testimony that there were checks missing from the Credit Union distinguishes this case from Commonwealth v. Vozzelli, 217 Pa.Super. 18,

268 A.2d 132 (1970), cited by the appellant. In *Vozzelli*, there was "no evidence presented that any tires were missing from the freight cars" from which they were allegedly stolen. Here there was proof that the checks were stolen.

11. See United States v. Kane, 319 F.Supp. 527 (E.D.Pa.1970) aff'd. 433 F.2d 337 (3d Cir. 1970), which presents a factual picture analogous to *Kibler.*

reasons for a new trial. The trial judge's decision not to take action beyond such time limitation was correct because any order entered would have been without effect. *Newman, supra.* We have noted the points which Kibler desired to argue under the "reservation" clause and find them to be devoid of merit.[12]

■ Appellant's final argument is that the trial judge erred when he denied Hamilton's September 16 motion for a continuance. Kibler who did not object to the denial of the continuance cannot raise the issue on this appeal. F.R.Crim.P., Rule 51. Furthermore, if appellant was not barred by Rule 51, the Judge's refusal to grant a continuance does not warrant reversal. The thrust of Kibler's claim is that the denial of the continuance prevented effective cross-examination of Wilma Harding on her medical history and hospitalization. The record is to the contrary and reveals that Harding was vigorously and extensively cross-examined. The granting of a continuance is within the discretion of the trial judge and his decision will not be disturbed except for abuse of that discretion. United States v. Weathers, 431 F.2d 1258 (3d Cir. 1970), United States v. Hendrickson, 417 F.2d 225, 228 (3d Cir. 1969), cert. denied 397 U.S. 1026, 90 S.Ct. 1271, 20 L.Ed.2d 537 (1970), United States v. Williams, 254 F.2d 253, 254 (3d Cir. 1958). There was no abuse here.

The convictions will be affirmed.

---

12. First, appellant argues that evidence seized from Wilma Harding at the time of her arrest was the product of an illegal search and should not have been admitted by the Court. When Kibler asked for an evidentiary hearing before the trial court, the judge ruled he had no standing to question the search. Alderman v. United States, 394 U.S. 165, 171–172, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) supports the judge's conclusion. Second, appellant's claim that Hamilton's statements incriminating himself were wrongly admitted in evidence is misfounded. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), cited by appellant does not apply to the statements here, which inculpated only Hamilton and did not incriminate Kibler. Kibler's third contention, that the judge erred in not giving a special instruction regarding the circumstantial nature of the evidence, is groundless. Holland v. United States, *supra,* 348 U.S. p. 140, 75 S.Ct. 127, holds that such an instruction is unnecessary and is, in fact, "confusing and incorrect."