## Commonwealth v. Stone

*Thomas R. Hecker*, for Commonwealth.
*Richard S. Wasserbly*, for defendant.

BECKERT, *J.*, January 15, 1975—The primary question before us in the instant matter is whether section 3922 of the Pennsylvania Crimes Code of December 6, 1972, P.L. 1068 (No. 334), effective June 6, 1973, 18 Pa. S. §3922, setting forth the crime of theft by deception, is an enlargement of the crime of cheating by fraudulent pretenses as spelled out in The Penal Code of June 24, 1939, P.L. 872, sec. 836, as amended, 18 PS §4836.

Defendant, David Stone, was charged by Mrs. Harold R. Cody, Jr., in a private criminal complaint with theft by deception. Defendant proceeded to trial without benefit of jury before the undersigned. At the conclusion of the Commonwealth's case, defendant's motion for a demurrer was overruled. The defense then rested without offering evidence and thereafter a verdict of guilty was rendered.

The Commonwealth called but one witness,

namely Mrs. Cody, and her testimony stands unrebutted concerning the facts of defendant's involvement with her and her husband. Her testimony, as here pertinent, is as follows:

On April 17, 1974, defendant appeared at her home and told her that the Dice Real Estate Company had sent him to inquire as to whether she would like to have her house painted. At Mrs. Cody's request, after looking around the premises, defendant gave her an estimate that he would paint the house for a cost of $500. She told him she would have to discuss his offer with her husband before she could give him a reply. Mrs. Cody gave defendant her telephone number and invited him to call that same evening, but she did not hear from him until the next morning, when he again visited her home, at which time she told him that her husband intended to do the (painting) work himself.

Over one week later, Mrs. Cody called the telephone number which defendant had provided her (whether she spoke with defendant himself is not clear), and said that she and her husband had decided to have defendant paint their home. Instead of contacting her by telephone, defendant again appeared at the Cody home on the morning of Saturday, April 28. He then told her that he would require a deposit from the Codys in the sum of $250., so that he could purchase materials. A check in that amount was handed to him and he said that he would return at 8:30 the following morning to commence work.

Defendant did not appear for work on Monday. On Monday afternoon he called to tell Mrs. Cody that he could not begin work that day. She told him they no longer wanted him to do the painting for them. Either during the course of that conversation

or a later one the same Monday, defendant informed Mrs. Cody that he had "purchased some materials and paint and primer to do the work on her house and that he had spent $70. over what we had given him (Notes of Testimony, 13)." She told him that if he would give them the materials that he had bought, along with the receipt evidencing his purchase, the Codys would reimburse him for the excess of his expenditures over the moneys they had already paid him. Defendant never delivered the material to their home nor performed any work on their home.

The check previously referred to was subsequently cancelled by the Codys' bank and returned to them as of course with their bank statement. On the reverse side of the check appears a signature "David Stone." Over defendant's objection, the cancelled check was admitted into evidence as Commonwealth exhibit "C-1."

Defense counsel contends that the only theory on which the guilty verdict could rest is that defendant obtained property of Mrs. Cody by intentionally creating a false impression as to his intention to perform the work, that is, that defendant, although stating that he was going to perform the work, did not intend to do so. The defense, therefore, asserts that since there was no false representation of an existing fact by defendant, the crime of theft by deception has not been established, or in the alternative that if the present Crimes Code does cover a false representation of an intention to perform a promise that there was nothing shown in the evidence in this case to support a factual conclusion that defendant did not intend to perform the promised painting. With each of these propositions we disagree for the following reasons:

There seems to be no doubt, and the Commonwealth so concedes, that if this factual situation had been presented under The Penal Code of 1939, a demurrer should have been sustained. Numerous cases can be found standing for the proposition that the crime of cheating by fraudulent pretenses must have as a necessary element the false representation of an existing fact: Commonwealth v. Wright, 220 Pa. Superior Ct. 12 (1971); Commonwealth v. Silia, 194 Pa. Superior Ct. 291 (1960), cert. den. 368 U.S. 969, 82 S. Ct. 443, 7 L. Ed. 2d 397 (1962).

There can also be no doubt that in the minds and words of those writers who have discussed this area of our Crimes Code that the framers thereof attempted to widen the concept of the crime of cheating by fraudulent pretenses. See Jarvis, Penna. Crimes Code and Criminal Law, §3922 — discussion—page 6. Toll, Penna. Crimes Code Annotated, page 429, whereat it is stated: "Existing law makes it a crime to cheat by fraudulent pretenses. The Penal Code of 1939, §836, as amended 1943, May 21, P.L. 306, sec. 1 (18 PS §4836). This section broadens existing law under which 'false pretense' is limited to false representations of existing facts. Commonwealth v. Becker, 151 Pa. Superior Ct. 169 (1943)"; Goldblatt and Belsky, Analysis and Commentary to the Penna. Crimes Code, page 94.

The degree to which the old law of cheating by fraudulent pretenses was broadened by the new Crimes Code is, however, somewhat difficult to articulate. It appears to the undersigned that the framers of this section had to and did proceed most cautiously in attempting to achieve the desired result. That result, as I view it, is not to have a breach of contract situation (which is clearly civil in na-

ture) now designated as a crime, but to get within the grasp of the criminal law the confidence men and flimflam operators who, with careful avoidance of any misrepresentation of an existing fact, have in the past gone free to further ply their flagrant swindles by again perpetrating fraudulent promises of "things" to be performed in the future.

With this background in mind let us examine the pertinent language of the statute.

"Section 3922. Theft by deception.

"(a) Offense defined — A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

"(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; *but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise.*" (Emphasis added.)

The last clause of the above section sets forth an exception to the first method of deception by specifically stating that "deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise." This language covers and takes outside of the scope of this section the fact that a mere breach of promise to perform can result in a criminal conviction and therefore does not allow the criminal courts to be used as an instrument of harassment for alleged money damages. This clause also provides an evidentiary standard to which the Commonwealth must measure up, namely that of requiring the Commonwealth to

produce evidence other than the mere nonperformance of the promise and by such evidence establish beyond a reasonable doubt that defendant did not intend to perform. This leads to defendant's second contention, namely that the Commonwealth's evidence shows only that defendant did not paint the house but it fails to demonstrate his intentions never to do the work, thereby, contends the defense, it falls short of the degree of proof required under section 3922.

Had there been no testimony by Mrs. Cody concerning her contacts and attempts to contact defendant after an agreement was reached with him on Saturday, April 28, we would agree that nothing more than a bare nonperformance of a promise has been shown, and that such nonperformance, by itself was inconclusive. However, we must construe the evidence in the light most favorable to the Commonwealth, and in doing so, we find ample reason to disagree with defense counsel's position: United States v. Clark, 294 F. Supp. 1108 (1968), affd. 425 F. 2d 827, cert. denied 400 U.S. 820, 91 S. Ct. 38, 27 L. Ed. 2d 48 (1970); Commonwealth v. Fisher, 223 Pa. Superior Ct. 107 (1972).

It is our right to accept as true and correct the inference which can properly be drawn from the Commonwealth's testimony: Commonwealth v. Tatro, 223 Pa. Superior Ct. 278 (1972). Here the inference is most strong that defendant, once having received the $250. deposit, never intended to take any further action towards fulfilling his end of the bargain. This subsequent failure either to perform work on the house or to deliver to the Codys the materials he allegedly purchased, when coupled with his lack of response to Mrs. Cody's offer to

reimburse him for his alleged excess expenditure, easily lead to a conclusion that the Codys' money was obtained by defendant as a scheme to defraud.

If defendant had, in fact, spent $70. more for supplies than the Codys gave him, he certainly would have been expected, under any reasonable man's standard, to have followed through in accepting Mrs. Cody's proposal. From his failure to do so we can only infer that he either never made the expenditure which he claims or that he utilized elsewhere the materials purchased with no intention of using them to fulfill his obligation to the Codys. His overall conduct was consistent with an intention not to perform the promised painting.

Defendant also argues that the cancelled check should not have been introduced into evidence, and that, absent the check, there would be no proof that defendant obtained property from the Codys as required under section 3922(a). We will not belabor this argument, since, in addition to the check itself, there was additional, credible evidence in the form of defendant's admission that he had expended $70. over what the Codys had given him. Evidently, based upon the record before us, the Codys had never dealt with defendant before this incident or since and there is no evidence that any other money changed hands between them except the $250. testified to by Mrs. Cody, so that, inferentially, he was, by his own words, acknowledging receipt of the money and its application to his own use.

Accordingly, we conclude that the elements required to prove a theft by deception were established at defendant's trial by the required degree of proof so as to adequately support the finding of guilt. We therefore enter the following

## ORDER

And now, January 15, 1975, defendant's motions in arrest of judgment and for a new trial are hereby dismissed and denied. Defendant is directed to present himself for sentencing on the date to be set by the district attorney of this county.