UTSLER, Appellant v. STATE, Respondent

(171 N.W.2d 739)

(File No. 10688. Opinion filed October 30, 1969)

**Richard Braithwaite,** Sioux Falls, for appellant.

**Gordon Mydland,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, for respondent.

HOMEYER, Judge.

This is a proceeding under the Uniform Post-Conviction Procedure Act, SDCL 1967 Ch. 23-52. On October 4, 1966, petitioner, Gilbert Arizona Utsler, was convicted by a jury of the crime of robbery in the first degree. On October 6, 1966, he was sentenced to a prison term of ten years. There was no appeal from the conviction. In this proceeding and at the trial because of indigency he has been represented at all stages by court-appointed counsel.

Petitioner contends his constitutional rights were violated because (1) prior to trial the court refused to allow him funds to employ a medical expert to assist in preparation of his defense; (2) admission of certain impeaching testimony in rebuttal; and (3) an in trial identification of the accused after a pretrial lineup.

### Pretrial Assistance of Medical Expert

Before trial Utsler petitioned the court for an examination by a psychiatrist "in regard to the available defense of involuntary intoxication" stating that he would voluntarily submit to such examination by a competent psychiatrist at the South Dakota State Mental Institution at Yankton. On August 29, 1966, an order was entered granting the petition. At public expense, Utsler was then taken to Yankton by the sheriff and examined by two psychiatrists. Their reports are a part of the record. They show Utsler's claimed use of alcohol since an early age and his placing blame for all his trouble upon such use. One of the reports

on "reasons for admission" says it was for a psychiatric examination of involuntary intoxication when the crime was committed. Neither report purports to answer that question, but both describe Utsler as an anti-social personality capable of standing trial.

When arraigned on September 23, 1966, Utsler's counsel filed another motion for reexamination because the question of involuntary intoxication was not answered, which the court denied, but allowed Utsler's counsel at public expense to travel to Yankton to consult the examining psychiatrists concerning the claimed defense.

At the commencement of trial on October 3rd, defense counsel informed the court he had contacted the superintendent of the state hospital, Dr. Lawrence G. Behan, who told him there was no such condition, state, or diagnosis as involuntary intoxication, that it would be useless to contact the examining psychiatrists because they would give no opinion thereon, and apparently they were not further contacted. Counsel then orally informed the court that he had talked with a psychiatrist in private practice at Sioux Falls who told him there was such a state and diagnosis in the field of psychiatry as involuntary intoxication and he would examine Utsler for a fee of $50; he moved for permission to have such examination conducted.[1]

Petitioner entered a general plea of "not guilty". He did not specially plead "not guilty by reason of mental illness" in addition to his general plea. SDCL 1967 23-37-1 et seq. No psychiatric evidence was presented at the trial either by the state or by the defense.

Defendant testified on his own behalf and denied the robbery which occurred shortly after midnight on July 4, 1966. He said he arrived in Sioux Falls between 6 p. m. and 7:30 p. m. on Sunday July 3rd, drinking beer at various taverns in Sioux

---

1. When arrested Utsler had about $74 on his person, $67 of which the state contended was stolen in the robbery. The motion asked for use of this money to employ a psychiatrist. In this proceeding it is not contended that this money was the property of Utsler or that Utsler had means to employ his own psychiartist.

Falls until he left Sioux Falls about 12:30 a. m. on July 4th. He was arrested at Madison, South Dakota, about 40 miles distant from Sioux Falls, shortly after 1 a. m. on July 4th. Except possibly for an inference of intoxication from a considerable consumption of beer testified to by the defendant between the hours mentioned, there is little or no evidence that he was intoxicated. SDCL 1967, 22-5-5 provides:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive, or intent with which he committed the act."

██ Intoxication is not a defense in South Dakota, but sufficient evidence of it could vitiate the specific intent which is an essential element in proving guilt of certain crimes. State v. Kapelino, 20 S.D. 591, 108 N.W. 335; Goings v. United States, 8 Cir., 377 F.2d 753. See also Annot., 8 A.L.R.3d 1236. In discussing **voluntary intoxication,** at page 1239, the annotator says, that discussion would seem to occupy the field for the decisions seem to indicate

"that it is only where the alcohol is introduced into the accused's system by force majeure that the intoxication would be regarded as involuntary for the purposes of the application of these rules. The courts in considering the questions here discussed have taken little or no notice of modern medical attitudes toward alcoholism as a disease, but have usually assumed that the intoxication must be treated as voluntary for purposes of determining criminal guilt, no matter how compulsive the accused's addiction to alcohol may have been. It is apparently only when the alcoholism produces a permanent

and settled insanity distinct from the alcoholic compulsion itself that the law will accept it as an excuse." See also Choate v. State, 19 Okl.Cr. 169, 197 P. 1060.

Petitioner does not claim that the medical expert from whom he desired an examination would have rendered an opinion favorable to this claimed defense, but he says, because he was without funds to employ a medical expert, his counsel could not effectively represent him and this violated his constitutional rights.

SDCL 1967 19-6-1 allows the court in either a civil or criminal proceeding when it deems expert evidence desirable to appoint one or more experts, not exceeding three, either on its own motion or that of any party, to testify at the trial. In criminal proceedings, the cost is paid by the county as a part of the costs of the action. In State v. Geelan, 80 S.D. 135, 120 N.W.2d 533, this statute was considered and we said:

> "This provision does not create an absolute right to the appointment of an expert witness. It merely permits the appointment of such witness in a proper case. Whether the appointment is made is committed to the discretion of the court."

See also SDCL 1967, 23-37-2 on court appointment of medical experts upon plea of "not guilty by reason of mental illness". At the time of trial there was no other provision in our statutes for appointment of experts.[2]

In our opinion neither the federal nor state constitution mandate that an indigent defendant in addition to counsel is entitled at public expense to "the full paraphernalia of defense", State v. Crose, 88 Ariz. 389, 357 P.2d 136, or preparation for a claimed defense. We have found no United States Supreme Court decision so holding. As the Arizona court said:

---

2. SDCL 1967 23-2-2 as amended now provides that court-appointed counsel for an indigent defendant is entitled to reasonable and just compensation for services rendered and his necessary expenses and costs incident to the proceedings in an amount to be fixed by the court.

"Appellant, in urging that we here broaden the term 'counsel' to include expert witnesses, misconstrues the function of this Court. That function in this case is only to interpret the constitutional provision; not to write it or re-write it. He asks us to construe it broadly—but we cannot 'construe' it when merely reading it will alone suffice. We have no doubt that those who make the law could appropriately provide impecunious defendants with such assistance as was sought here, were it deemed praticable and in the public interest to do so. They have not done so. They were under no constitutional compulsion to do so."

See also State v. Superior Court, 2 Ariz.App. 458, 409 P.2d 742; San Miguel v. McCarthy, 8 Ariz.App. 323, 446 P.2d 22; State v. Bowen, 104 Ariz. 138, 449 P.2d 603; State v. Chambers, 104 Ariz. 247, 451 P.2d 27. However, see People v. Watson, 36 Ill.2d 228, 221 N.E.2d 645, 222 N.E.2d 801, where under the facts in that case to assure defendant of a fair trial it was held necessary to engage an expert witness at government expense absent statutory authority, and State v. Second Judicial Circuit, Nev., 453 P.2d 421; also Annot., 21 A.L.R.3d 819.

### Impeaching Testimony

After testifying, both on direct and cross-examination, to drinking beer at bars in Sioux Falls, Utsler in cross-examination was asked without objection the following questions:

"Q. And then you were picked up later in Madison?

"A. Yes.

"Q. Now, when you were picked up in Madison, did one of the officers ask you if you had been in Sioux Falls?

"A. I believe so. I don't remember for sure.

"Q. And did you state that you had just come from Minneapolis—

"A. No. ·

"Q. —and had just gone around the outskirts of Sioux Falls?

"A. No, sir. I believe I was asked that question—I'm not positive—and I answered it.

"Q. But you didn't give that answer?

"A. I said I was coming from Sioux Falls.

"Q. But, you say that you didn't give this answer, that you had just come from Minneapolis and had gone around the outskirts of Sioux Falls?

"A. I hadn't gone around the outskirts.

"Q. Well, did you give that answer? That's what I'm asking you.

"A. No, sir."
In rebuttal, over objection, a Madison police officer testified:

"Q. Officer Spiering, at the time you apprehended Gilbert Arizona Utsler in Madison, South Dakota on July 4, 1966, did you ask him at the scene of the apprehension if he had been in Sioux Falls?

"A. I did.

"Q. What was his answer? * * *

"A. He stated that he had went around the outskirts of Sioux Falls."

Before apprehending Utsler on the streets of Madison, authorities had been alerted via radio to be on the lookout for a

white Mustang with California license plates believed to be driven by a party involved in an armed robbery at Sioux Falls.

 The Miranda[3] warnings were not given before the police officer asked the questions, supra, and it is now contended the receipt of Spiering's testimony violated Utsler's constitutional rights. We see nothing in the questioning which we feel amounted to an in-custody interrogation calling for Miranda warnings. This applies whether it be viewed as substantive evidence or as evidence admitted for impeachment purposes only.

██ ██ Miranda does not bar all inquiry by authorities without previous warnings. Considering the nature of the question and the time, place, and circumstances under which it was asked, we do not believe Utsler was subjected to the custodial interrogation prohibited by Miranda without prior warnings. See State v. Werling, 84 S.D. 282, 170 N.W.2d 470. In our opinion Miranda was not intended to prohibit police officers from asking suspicious persons such things as their names and recent whereabouts without fully informing them of their constitutional rights. Such has not been the generally accepted interpretation of the Miranda and Escobedo[4] decisions. See Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476; United States v. Gibson, 4 Cir., 392 F.2d 373; United States v. Clark, D.C., 294 F.Supp. 1108.

### Lineup Identification

A few hours after the robbery, Utsler was identified by Steve Sechser on whom the robbery was perpetrated in a lineup of three persons at the police station in Madison. He was again identified by Sechser at the trial. Utsler was without counsel at the pretrial lineup. He asserts the in trial identification was constitutionally erroneous.

██ ██ It is now settled law that an in court identification by a witness to whom an accused was exhibited before trial

---

3. Miranda v. State of Arizona, June 13, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 and SDCL 1967 23-44-2.
4. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

without notice to and in the absence of counsel must be excluded unless it can be established that such evidence had an independent origin or that error in its admission was harmless. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. These cases were decided on June 12, 1967. On the same date the United States Supreme Court decided Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, in which it was held that the rule promulgated in Wade and Gilbert was not retroactive. Since the asserted constitutional error occurred before June 12, 1967, Utsler's claim in this regard requires no further consideration.

Affirmed.

All the Judges concur.