STATE, Respondent v. SAHLIE, Appellant

(245 N.W.2d 476)

(File No. 11678. Opinion filed September 15, 1976)

William A. Delaney, III, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

Kennith L. Gosch of Bantz & Gosch, Aberdeen, for defendant and appellant.

McKEEVER, Circuit Judge.

Defendant George J. Sahlie was convicted by a jury on a charge of first degree robbery, and was sentenced to ten years imprisonment. He has brought this appeal alleging numerous assignments of error, only four of which are treated herein. Defendant contends that his right to a fair trial was violated by the prosecution's failure to obey the trial court's pre-trial orders; secondly, that the trial court erred when it allowed an in-court identification of the defendant; thirdly, that the trial court abused its discretion in refusing to provide him with a fingerprint expert, and, finally, that the trial court erred by not conducting a hearing on the remoteness of prior felony convictions before allowing their use in impeaching the defendant.

At the trial, the evidence established that the defendant checked into the Breeze Inn Motel in Aberdeen around noon on January 1, 1975. The state's principal witness, Joann Loomis, an employee of the North Star Service Station, testified that some-

time during the evening of January 1st she sold a package of rolls and a quart of milk to a man later identified as the defendant. Before she finished ringing up the sale, however, the individual made an additional purchase. This additional item was added to the original sales slip by Loomis in her own handwriting.

Loomis testified that later, as she was closing up, the same man again entered the station. He walked to the rear of the station and picked up a package of rolls which he brought to the counter. As he approached her, he pulled out a gun, pointed it at her, and said, "This is a robbery." He walked around the counter and told her to open the till, which she did. The man took the money and left the station, whereupon Loomis called the police.

On January 2, 1975, after the defendant failed to return to his motel room, the owner entered the room. In the room he found a wrapper from a package of rolls and a sales slip which contained some handwritten numbers. These items were identified by Loomis as coming from the station. Additionally, she identified the handwriting on the sales slip as her own. Following an investigation, the defendant was later arrested and convicted of first degree robbery.

Initially, the defendant contends that his right to a fair trial was violated by the prosecution's failure to obey the trial court's pre-trial orders. At the arraignment on February 5, 1975, the trial court requested that state and defense counsel stipulate to discovery matters rather than require motions for discovery. The court informed the parties that if there were any areas of controversy a discovery motion would be heard. After the parties failed to agree, the court ordered the state, in substance, to produce (1) a copy of a fingerprint tab taken from the cash register, (2) a copy of the sales slip containing the handwriting exemplar of Loomis, and (3) all other physical items of evidence. Additionally, the state was ordered to take precautionary measures to insure that prospective jurors would not be permitted to see the defendant in handcuffs, that during the trial the defendant's guards would not wear their uniforms, that no mention be made of other criminal charges currently pending against the defendant, unless related to the case, and that defendant be supplied with the

names of other suspects tentatively identified by Loomis at a photographic lineup. These court orders were not obeyed, which requires this court to remand for a new trial. Cf. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

▮ While it is settled that the state is not required to make available to the defendant all of its investigations in a case, State v. Pickering, 1973, 87 S.D. 331, 207 N.W.2d 511, once the trial court, in its discretion, has ordered production of certain evidence, those orders must be expeditiously carried out and obeyed. The record shows that in the instant case the state failed to do so.

▮ It was argued that if there were negligent violations of the court's orders herein such violations resulted only in harmless error. Several such violations were indeed harmless; however, the cumulative effect of all the violations herein resulted in an unfair trial. This is particularly true of the failure to produce the fingerprint tab which the court had ordered produced prior to trial. The state argues that the prints were not identifiable and therefore nonexculpatory. Due process cannot be satisfied unless the defendant is provided some opportunity to examine possible exculpatory evidence long enough before trial so as to have at least an opportunity to determine if such evidence is or is not exculpatory.

▮ Additionally, the rule of Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, has been the law of this state since Geelan v. State, 1970, 85 S.D. 376, 182 N.W.2d 311. In Geelan we stated that "due process requires the sovereign to produce, upon request, evidence favorable to an accused which is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In the present case, the fingerprint tab and the sales slip both had a direct bearing on the possibility of guilt. Both items were material to guilt, and each may be potentially exculpatory. Irrespective of exculpation, the items were ordered to be produced.

The state argues that the case of State v. Pickering, supra, is controlling. Such is not the case; however. In Pickering, the state

"fully and conscientiously complied with the court's written order to produce and that the state was completely candid in responding to the court's interrogation * * *." 207 N.W.2d at 514-515. The present case can be distinguished on this fact alone. Here the state was anything but conscientious and candid.

It is axiomatic to a fair trial that the state obey the court's orders concerning the conduct of the trial. The state's conduct in the present case is hardly in keeping with the prosecutor's "overriding obligation, shared by the court, to see that defendant receives a fair trial, however guilty he may be." State v. Sha, 1972, 292 Minn. 182, 193 N.W.2d 829, 831. It is well to keep in mind that a prosecutor's duty is not simply to convict but to do justice. Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

The second issue raised by the defendant relates to the sufficiency of the evidence to justify the trial court's finding of independent identification.

During the investigation, the police showed Loomis pictures of a series of possible suspects. All of the photos shown were black and white "mug shots" except the picture of the defendant, which was a color snapshot. The defendant argues that this procedure was so improperly suggestive that it tainted the witness' in-court identification, and that therefore said in-court identification must be suppressed.

It is settled law that in-court identifications are inadmissible when they stem from photo identification procedures so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Neil v. Biggers, 1972, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; State v. Barcley, 1975, 88 S.D. 584, 225 N.W.2d 875; State v. O'Connor, 1973, 87 S.D. 77, 203 N.W.2d 183. The burden of establishing impermissible suggestivity is placed upon the one seeking to suppress the evidence, State v. Barcley, supra.

It is equally true, however, that even where it is shown

that an illegal identification procedure was used prior to trial an in-court identification is admissible if the state proves by clear and convincing evidence that the in-court identification had an independent origin (i.e., based upon observations of the suspect other than the photograph shown to the witness). United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; State v. Winston, 1974, 300 Minn. 314, 219 N.W.2d 617; State v. Bash, 1974, Iowa, 214 N.W.2d 219; State v. Salazar, 1973, Iowa, 213 N.W.2d 490; State v. Watts, 1973, 296 Minn. 354, 208 N.W.2d 748.

Assuming the defendant has met his burden by showing that the identification procedures were impermissively suggestive, the trial court could still have admitted the in-court identification by Loomis if it concluded that there was clear and convincing proof that the in-court identification of the defendant had an untainted origin in Loomis' observations made prior to any photographic identification.

The trial court determined that the suggestive photograph was not the basis for identification but that instead the in-court identification was based upon the witness' own recollections. The appellant's assertions to the contrary are without merit, as is his assignment of error.

The defendant additionally contends that the trial court erred in refusing to provide him with a fingerprint expert. We do not have sufficient reason from the trial record herein to so hold, but in that this case is being remanded, it is appropriate for this court to provide some guidelines for the exercise of the trial court's discretion in the appointment of expert witnesses. SDCL 19-6-1 provides:

"Whenever, in a civil or criminal proceeding, issues arise upon which the court deems expert evidence is desirable, the court, on its own motion, or on the request of either the state or the defendant in a criminal proceeding, or of any party in a civil proceeding, may appoint one or more experts, not exceeding three on each issue, to testify at the trial."

In State v. Geelan, 1963, 80 S.D. 135, 120 N.W.2d 533, this court held that:

> "This provision [did] not create an absolute right to the appointment of an expert witness. It merely permits the appointment of such witness in a proper case. Whether the appointment is made is committed to the discretion of the court." 120 N.W.2d at 535.

This provision was given further judicial gloss in Utsler v. State, 1969, 84 S.D. 360, 171 N.W.2d 739, where this court held that "neither the federal nor state constitution mandate that an indigent defendant in addition to counsel is entitled at public expense to 'the full paraphernalia of defense' (citation omitted), or preparation for a claimed defense." 171 N.W.2d at 742.

Recently, this court added to the language of Utsler. In State v. Murphy, 1975, 89 S.D. 486, 234 N.W.2d 54, we stated that SDCL 19-6-1 and the language of Utsler should not "be so narrowly construed as to have them justify a denial of court-appointed expert witnesses where such are essential to adequate defense." It therefore becomes necessary for the trial court to determine the proper case when expert witnesses are essential to an adequate defense.

After reviewing a number of similar cases,* we suggest that the following general guidelines be employed in determining when court-appointed experts are essential to an adequate defense. Initially, the request must be made in good faith. The request must be reasonable in all respects. The request must be timely and must set forth specific reasons which seem to make such services needed or necessary to the defendant. The request must specify that the defendant is financially unable to obtain the required service himself and that such services would otherwise be justifiably obtained were the defendant financially able.

---

\* State v. McGhee, 1974, Iowa, 220 N.W.2d 908; State v. Williams, 1973, Iowa, 207 N.W.2d 98; United States v. Chavis, 1973, 155 U.S.App. D.C. 190, 476 F.2d 1137; United States v. Bass, 1973, 9 Cir., 477 F.2d 723; United States v. Hamlet, 1973, 5 Cir., 480 F.2d 556; United States v. Theriault, 1971, 5 Cir., 440 F.2d 713; United States v. Schultz, 1970, 8 Cir., 431 F.2d 907.

The trial court should accord considerable weight to the application, but it is not in any way bound thereto. It should make an independent evaluation, taking into consideration all relevant factors. If the trial court finds the application reasonable, it should be granted, but, if it is found to be frivolous, unreasonable, unnecessary for an adequate defense, or without underlying factual support, it should be denied. In either event, the trial court should specify on the record the granting or denial of such request together with the reasons therefor.

Additionally, it should be noted that if the trial court grants the application the defendant has no right, constitutional or otherwise, to the appointment of an expert of his own choosing. Cf. United States v. Baldi, 1953, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549.

Finally, the defendant asserts error in that the trial court failed to conduct a hearing on the remoteness of prior felony convictions before allowing their use in impeaching the defendant.

The determination of admissibility of such evidence should be made by the trial court and should not be disturbed on appeal except where an abuse of discretion is shown. Allen v. McLain, 1955, 75 S.D. 520, 69 N.W.2d 390. While this court agrees with its holding in State v. Flack, 1958, 77 S.D. 176, 89 N.W.2d 30, that the jury should determine the disparaging effect of such impeachment upon the testimony of the witness we reject the implication in Flack that any conviction, no matter how remote, may be considered by the jury.

In the present case, evidence was presented concerning convictions as old as thirty-five years. Although there was a succession of eight convictions following the first from which the trial court may have found probative value as to all nine convictions, it should have first determined the number, dates and offenses of which convictions were entered prior to allowing their use for impeachment purposes. The trial court should especially scrutinize convictions over ten years old, keeping in mind the admonition found in State v. Van Beek, 1973, 87 S.D. 517, 211 N.W.2d 355, that basic to the use of prior convictions for impeach-

ment purposes is the requirement that the conviction be not too remote in time.

Therefore, we hold the defendant herein did not get a fair trial due to the cumulative effect of the state's noncompliance with certain pre-trial orders as fully discussed above in the first assignment of error. Consequently, this case is reversed and remanded for a new trial.

DUNN, C. J., and WINANS and COLER, JJ., concur.

McKEEVER, Circuit Judge, sitting for WOLLMAN, J., disqualified.

ZASTROW, J., not having been a member of the court at the time this case was orally argued, did not participate.