STATE of South Dakota, Plaintiff
and Respondent,

v.

Robert James O'BRIEN, Defendant
and Appellant.

No. 12255.

Supreme Court of South Dakota.

Argued Sept. 19, 1978.

Decided Nov. 30, 1978.

William A. Delaney, III, Butte County State's Atty., Belle Fourche, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Neil Carsrud, Belle Fourche, for defendant and appellant.

DUNN, Justice.

This is an appeal from a conviction of third-degree burglary in the Eighth Judicial Circuit. Defendant was found guilty by a jury on May 6, 1977, and was sentenced according to the habitual offender statute to 20 years in the state penitentiary. We affirm.

On January 7, 1977, at approximately 9:30 p. m., the Gibson store in Belle Fourche, Butte County, South Dakota, was burglarized. Entry was gained by breaking the door casing. A counter containing various handguns was broken into, and 22 pistols valued at $3,400 were taken. A safe had been moved from the place where it was regularly kept to a place near a rear door. Lying on top of the safe were two wrecking bars and a duffel bag containing other duffel bags and a walkie-talkie device. An inventory revealed that the pistols were the only items missing from the store, and it appears that the pistols have not been recovered.

On the evening of the Gibson burglary, a Belle Fourche resident who lived approximately one or two blocks from the Gibson store observed a maroon and white Ford 3/4-ton pickup with a topper camper drive by his home in different directions some 13 to 15 times in a period of one-half hour. He got into his own vehicle and proceeded to follow the pickup; he came close enough to the pickup to notice that it had paper license plates and the driver had a beard. On January 12, 1977, the resident positively identified defendant's pickup as the one he had seen passing his home in the vicinity of the Gibson store numerous times prior to the burglary. The resident also identified this same pickup when the defendant drove it to the courthouse at the time of the preliminary hearing.

On the afternoon of the Gibson burglary, defendant purchased several items from Motive Parts & Supply, Inc., in Rapid City, South Dakota. Those items consisted of gas cans, three stocking caps, Everready alkaline AA batteries, and some duffel bags. A Motive Parts employee identified defendant's pickup as the pickup he had seen on January 7, 1977, in front of the store while defendant made his purchases. One of the duffel bags found in the Gibson store after the burglary was positively identified as having been purchased by defendant from Motive Parts. This particular bag had holes in it, and at the time of purchase there was a discussion about a price reduction because of the condition of the bag. Another duffel bag found in the Gibson store had a Motive Parts price tag attached to it. The figure on the price tag matched the price written on the sales slip given to defendant after his purchases. The particular batteries purchased by defendant were the same type as those found in the walkie-talkie device discovered in the Gibson store after the burglary.

An employee of the Gibson store testified that she noticed defendant wandering around the store a few days before the burglary. She testified that she noticed him particularly because of the way he looked and because she had not seen him around before. She stated that she took special notice of strangers and kept an eye on them as a habit. She remembered defendant's eyes, tall thin build, and the way he was dressed.

Defendant's case consisted of alibi testimony from his landlady. Defendant apparently rented one of the basement bedrooms in her five-bedroom house. She testified

that on January 7, 1977, defendant was upstairs in the house in Rapid City at approximately 5–5:30 p. m. drinking coffee. At that time, he went downstairs, and she could not say that she saw him later that evening and she had no way of knowing whether he left the house or not during the evening.

Defendant was arrested on January 12, 1977, in Rapid City, South Dakota, and charged by preliminary information with third-degree burglary. On February 16, 1977, defendant was also charged as an habitual criminal in an additional information which alleged one prior felony conviction. Defendant filed a motion to suppress certain evidence, and a suppression hearing was held on April 5, 1977. The trial judge denied the motion to suppress. The case was tried to a jury on May 5, 1977, and the defendant was found guilty on May 6, 1977. The habitual criminal trial was held on May 26, 1977, and the defendant was convicted. On June 1, 1977, the trial judge sentenced defendant to a total term of 20 years in the state penitentiary.

Defendant argues four basic issues raised in his assignments of error as follows: (1) whether the trial court erred in not suppressing items seized from defendant's pickup, (2) whether the trial court erred in allowing a witness to make an in-court identification of the defendant as being the same person she saw in the store several days prior to the burglary, (3) whether the trial court erred in not dismissing the information charging defendant with a violation of the habitual offender statute, and (4) whether the evidence is sufficient to justify the verdict.

With regard to the first issue, defendant contends that valid consent was not given to the authorities to search his pickup, and therefore the evidence seized from his pickup should have been suppressed by the trial judge. In determining whether there was a valid consent, we are guided by the standard set down by the United States Supreme Court as follows:

"[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Schneckloth v. Bustamonte,* 1973, 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875. See also, *State v. Kissner,* 1977, S.D., 252 N.W.2d 330, 333.

The suppression hearing record indicates that on January 12, 1977, a Pennington County deputy sheriff stopped defendant's vehicle because of a description received by police communications earlier in the week regarding a suspect vehicle in the Belle Fourche burglary. Defendant was informed that there was a report that a vehicle matching the description of his pickup was seen in the area of a crime. After an identification check and routine questioning, the deputy departed. A short time later, the deputy received further information that the suspects were described as six feet tall, weighing 190 pounds, and wearing heavy beards. Defendant was approximately that tall with a heavy beard. The deputy stopped the suspect vehicle once again and asked defendant if he would accompany him to the sheriff's office to answer a few questions. The deputy, who was dressed in civilian clothes, advised defendant that he did not have to come if he did not want to. Defendant testified that he figured that if he did not go downtown, they would probably take him anyway.

The deputy took photographs of defendant's pickup in the police parking lot. The deputy questioned defendant about his whereabouts on the night of the burglary, whether he had purchased certain items from Motive Parts, whether anyone else had driven his pickup, etc. At the end of the 40-minute conversation, the deputy

asked defendant for permission to search his pickup and informed defendant that he did not have to let the deputy search the pickup. The deputy showed defendant a written consent form, and defendant indicated that he did not want to sign anything. Defendant inquired as to what would happen if he did not sign the form, and the deputy replied that he would submit an affidavit to the court in an attempt to get a search warrant to search the vehicle. Defendant testified that he knew that getting a search warrant would take hours, which would mean he would be there all afternoon and that he had nothing in the truck anyway, so he signed the consent form. Prior to the signing, the deputy advised defendant that he had the right to refuse the search and that he did not have to sign the consent form. The deputy then searched the pickup for handguns and found none; however, he did find two walkie-talkie radios, a pry bar, channel lock pliers, a ball peen hammer, a stocking cap, and pills. These items were kept by the deputy, and a receipt was issued to defendant.

■ The deputy was at all times in civilian clothing without a gun which tends to negate any implied duress or coercion. The deputy made no threats or promises to defendant. Defendant testified that no threats were made to get him into the sheriff's office. Defendant was not under arrest or in custody when he signed the consent form and was advised of the fact that he was not under arrest and did not have to sign the consent form. The record indicates defendant was apprised that he had a right to refuse consent. Therefore, it appears "clear that defendant was not submitting to authority by his consent," but rather that "[h]e merely decided to consent rather than speculate as to whether a warrant would be issued." *State v. Kissner,*

supra, p. 334. Under the circumstances before us, we find that defendant's consent was in fact voluntarily given which constitutes a valid consent. Accordingly, the trial court did not err when it ruled that the evidence seized from defendant's pickup would not be suppressed.[1]

■ With regard to the second issue, defendant contends that because the Gibson employee saw defendant at the sheriff's office prior to trial and without the presence of counsel[2] she should not have been allowed to make an in-court identification of defendant as being the same person she saw in the Gibson store several days prior to the burglary. In *Utsler v. State,* 1969, 84 S.D. 360, 171 N.W.2d 739, we stated the rule in this jurisdiction regarding identification as follows:

"It is now settled law that an in court identification by a witness to whom an accused was exhibited before trial without notice to and in the absence of counsel must be excluded unless it can be established that such evidence had an independent origin or that error in its admission was harmless. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178." (84 S.D. at 368–369, 171 N.W.2d at 743.)

See also, *State v. Bullis,* 1977, S.D., 255 N.W.2d 290; *State v. Mullins,* 1977, S.D., 260 N.W.2d 628; *State v. Johnson,* 1972, 87 S.D. 43, 202 N.W.2d 132. Such independent origin or harmless error must be shown by the state by clear and convincing evidence. *State v. Sahlie,* 1976, S.D., 245 N.W.2d 476.

The trial court heard the evidence outside the presence of the jury regarding whether or not the Gibson employee's in-court identification was tainted by the fact that she

1. At trial, the items found in defendant's pickup during the consent search were received subject to withdrawal upon a failure to show relevancy or materiality. A few hours later, the trial judge ruled that the items found in defendant's pickup would not be admitted into evidence. These items were not submitted to the jury with the rest of the exhibits at the end of the case.

2. Counsel for defendant was appointed on January 24, 1977, and the employee could not remember when the incident in the sheriff's office took place. Therefore, it is not clear if defendant even had counsel at that point.

had seen the defendant in the sheriff's office prior to trial. The employee testified that she took special notice of defendant because he was a stranger, and she stated that defendant's appearance was remarkable from the eyes up. In pertinent part, the employee's testimony was as follows:

"Q Would you be able to recognize him today if you had not seen him on that day?

"A On which day?

"Q On the day you were down at the Butte County Sheriff's office.

"A Yes.

"Q In other words, even if you had not seen him at any time between the few days before the robbery and today, you could still identify this picture?

"A Yes.

"Q And you could identify that as being the same man that was in the store on that day?

"A Yes.

"Q In other words, your seeing him that day does not in any way affect your ability to recognize him today, is that correct?

"A No.

"Q Why did you notice him in the first place at the store?

"A Well, just by the way he looked. I mean, I notice strange people coming into the store, and I keep an eye on 'em, as a habit.

"Q I'm not trying to ask anything out of the ordinary, but what did you notice that was strange?

"A His eyes, the way he was dressed, tall, thin, the hair.

"Q Did he have distinctive eyes that day?

"A Yes.

"Q Do you still think he has distinctive eyes today?

"A Definitely.

"Q Does his hair look approximately the same?

"A He's got it combed today.

"Q Any other differences that you notice?

"A No beard. But it's still the eyes and up.

\* \* \* \* \* \*

"Q And it's your testimony that despite the absence of a beard and hair being different, you can make an identification?

"A Yes, from the nose on up, and his build."

■ The trial judge found that the employee had "ample opportunity" to personally observe defendant in the Gibson store and that "if the proceedings at the sheriff's office were suspect at all, they did not taint her identification to the point she can not make an in-court identification \* \* \*." We agree with the trial judge and hold that the state met its burden in showing that the in-court identification had an independent origin and was not tainted by the out-of-court identification in the sheriff's office.

■ With regard to the third issue, defendant contends that the applicability of the habitual offender statute denied him equal protection of the law, and therefore the information charging defendant with a violation of the habitual offender statute should have been dismissed. To support his contention, defendant elicited the testimony of a former Butte County State's Attorney who stated that during a period of about ten years he prosecuted many individuals for felonies who were eligible under the habitual offender statute but he had never utilized the statute. Although the statements made by the former state's attorney indicate that the statute was seldom utilized, even lax, uneven, and selective enforcement of the statute would not show that it was unconstitutionally applied to defendant absent a showing that the particular "selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 1962, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446, 453. There is no showing of unjustifiable standards or arbitrary classifications. The statute applies equally and uniformly to all persons who

are charged under it. The constitutional validity of the statute is not affected by the fact that the statute is not utilized when an accused has prior felony convictions. *State v. O'Connor,* 1978, S.D., 265 N.W.2d 709. Prosecutors may exercise very broad prosecutorial discretion without violating the equal protection clause.[3] *State v. Gerdes,* 1977, S.D., 252 N.W.2d 335. There is no question but that the habitual offender statute withstands the challenge of denial of equal protection and is constitutional.[4] *State v. O'Connor,* supra. Therefore, the trial court properly refused to dismiss the information charging defendant as an habitual offender.

With regard to the fourth issue, defendant contends that the state failed to meet its burden of proving defendant's guilt beyond a reasonable doubt and that the circumstantial evidence was insufficient to justify the verdict rendered. We have expressed the appellate rules of review in this regard in *State v. Dietz,* 1978, S.D., 264 N.W.2d 509, as follows:

"In determining the sufficiency of evidence on appeal, the question presented is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt. *State v. Shank,* 1975, S.D., 226 N.W.2d 384, 387. In making that determination, 'this court will accept "that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict." ' *State v. Best,* 1975, S.D., 232 N.W.2d 447, 457. Although the rule at the trial level requires that the jury find the circumstantial evidence be conclusively inconsistent with any reasonable hypothesis of innocence, *State v. Best, supra,* the rule at the appellate level is that a guilty verdict will not be set aside if the evidence, including the circumstantial evidence and reasonable inferences, sustains a rational theory of guilt. *State v. Luna,* 1978, S.D., 264 N.W.2d 485." (264 N.W.2d at 510–511)

■ Applying the principles stated above, we have reviewed the evidence found in the settled record and partially discussed herein and have found that the circumstantial evidence against defendant was substantial and incriminating. It was the duty of the jury to weigh the evidence and the inferences therefrom, and by its conclusion that the evidence was sufficient to find defendant guilty beyond a reasonable doubt, it apparently found that the facts were consistent with his guilt and inconsistent with any reasonable hypothesis of innocence. We are convinced that the evidence sustains a rational theory of guilt from which the jury could reasonably find defendant guilty of the burglary of the Gibson store in Belle Fourche on January 7, 1977.

The judgment is affirmed.

All the Justices concur.

---

**3.** For a further discussion of the discretion of prosecutors in the application of the habitual offender statute in the due process of law context see *Bordenkircher v. Hayes,* 1978, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604.

**4.** With regard to defendant's argument that the statute violates the rule against double jeopardy, the statute does not create a new or independent crime but simply declares that being an habitual criminal does not constitute double jeopardy. *State v. O'Connor,* supra. In light of the fact that the trial judge properly exercised his discretion in sentencing within the confines of the statute, we find defendant's further contentions that the statute's application by the trial judge denied him due process of law and constituted cruel and unusual punishment to be without merit.