**STATE of South Dakota, Plaintiff and Respondent,**

v.

**George J. SAHLIE, Defendant and Appellant.**

No. 12321.

Supreme Court of South Dakota.

Argued June 6, 1978.

Decided April 12, 1979.

---

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, Steven L. Zinter, Asst. Atty. Gen., Pierre, on the brief.

Harry N. Sandstrom of Bantz, Gosch & Sandstrom, Aberdeen, for defendant and appellant.

FOSHEIM, Justice (on reassignment).

This case is before us on appeal for the second time. We refer to our previous decision, State v. Sahlie, S.D., 245 N.W.2d 476 (1976), for a further review of the facts.

Pursuant to the remand, appellant was retried on the charge of first-degree robbery. The jury again found him guilty. Prior to trial the court ordered appellant's expert witnesses to file written reports with the clerk of courts. By thus making the findings of his experts available to the prosecution, appellant contends he was denied due process and an adequate preparation of his defense. He relies heavily on *United States v. Bass,* 477 F.2d 723 (9th Cir. 1973); and *United States v. Theriault,* 440 F.2d 713 (5th Cir. 1971), which decisions relate to federal statutes. Appellant argues, however, since these cases were cited in our previous opinion as authority for when an expert witness should be appointed, we consequently made them applicable to the issues stressed in this assignment. We do not agree. After reversing appellant's first conviction we remanded the case with guidelines for the exercise of the trial court's discretion in the appointment of expert witnesses. *State v. Sahlie,* supra. Those guidelines did not mention the federal statutes. They referred specifically to SDCL 19–6–1 and several decisions of this

court based thereon [1] together with similar cases including those relied on by appellant. SDCL 19–6–1, now SDCL 19–15–9, provides:

> Whenever, in a civil or criminal proceeding, issues arise upon which the court deems expert evidence is desirable, the court, on its own motion, or on the request of either the state or the defendant in a criminal proceeding, or of any party in a civil proceeding, may appoint one or more experts, not exceeding three on each issue, to testify at the trial.

In entering its order to file reports the trial court followed SDCL 19–6–5, now SDCL 19–15–13, which reads as follows:

> The court may require each expert it has appointed to prepare a written report under oath upon the subject he has inspected and examined. This report shall be placed on file with the clerk of the court at such time as may be fixed by the court and be open to inspection by any party. By order of the court, or on the request of any party, the report shall be read, subject to all lawful objections as to the admissibility of the report or any part thereof, by the witness at the trial.

Since our statute was the basic authority for appointment of the experts, it follows that the procedure statute concerning the use of the experts' report is also applicable.

■ Appellant contends the court-appointed handwriting expert was "his witness" as distinguished from a "court witness" and therefore disclosure of his expert's findings violated due process in the adequate preparation of his defense under *United States v. Bass,* supra. *Bass,* supra, did not hold that disclosure of a defendant's court-appointed experts' report necessarily violates due process. SDCL 19–6–5 does not distinguish court experts from defense experts, but refers specifically to "each expert [the court] has appointed."

In *Jones v. Superior Court of Nevada County,* 58 Cal.2d 56, 22 Cal.Rptr. 879, 372 P.2d 919 (1962) Justice Traynor, stated:

1. *State v. Murphy,* S.D., 234 N.W.2d 54 (1975); *Utsler v. State,* 84 S.D. 360, 171 N.W.2d 739 (1969); *State v. Geelan,* 80 S.D. 135, 120 N.W.2d 533 (1963).

The identity of the defense witnesses and the existence of any reports or x-rays the defense offers in evidence will necessarily be revealed at the trial. The witnesses will be subject to cross-examination, and the reports and x-rays subject to study and challenge. Learning the identity of the defense witnesses and of such reports and x-rays in advance merely enables the prosecution to perform its function at the trial more effectively.[2]

In *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), the United States Supreme Court held that the adversary system of trial is not an end in itself. There is ample room within that system, which is designed to enhance the search for truth in the criminal trial, to ensure both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.

■ Appellant further claims that the filing of his expert's handwriting report six days prior to trial allowed the State the advantage of then retaining its own expert and to thus cushion the revelation that the handwriting on Exhibit 2 was not that of the State's witness JoAnn Loomis. The record indicates, however, that on June 10, 1977, eleven days prior to filing the report, the State requested that it be allowed to remove Exhibit 2 from the clerk's office "to have an expert examination made of said exhibit." At the trial there was also non-expert independent proof of the facts evidenced by the report.[3] While we find no error in the order of the trial court, we are satisfied such independent proof would have rendered any such error less than prejudicial. *State v. Smith,* 220 S.C. 224, 67 S.E.2d 82 (1951); 21 Am.Jur.2d Criminal Law § 355 at 382 (1965).

■ Appellant argues the trial court erred in finding there was an independent origin for JoAnn Loomis's identification of the defendant aside from the photographic lineup. Appellant contends that since JoAnn Loomis, the only witness to the crime, mistakenly identified the handwriting on Exhibit 2 as her own and did not give a correct account of events at the time of the robbery, she thus rendered the proof of independent origin less than clear and convincing. In *State v. Sahlie,* supra, we cited authorities for, and adopted, the following rule:

It is settled law that in-court identifications are inadmissible when they stem from photo identification procedures so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

\* \* \* \* \* \*

It is equally true, however, that even where it is shown that an illegal identification procedure was used prior to trial an in-court identification is admissible if the state proves by clear and convincing evidence that the in-court identification had an independent origin.

The clear and convincing standard requires a measure of proof that falls somewhere between the rule in ordinary civil cases and the requirement of our criminal procedure, that is, it must be more than a mere preponderance but not beyond a reasonable doubt. It is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. Evidence need not be voluminous or undisputed to accomplish this. *Cromwell v. Hosbrook,* 81 S.D. 324, 134 N.W.2d 777 (1965); *Brown v. Warner,* 78 S.D. 647, 107 N.W.2d 1 (1961). In *State v. Miller,* S.D., 248 N.W.2d

---

2. See also *State ex rel. Keller v. Criminal Court of Marion Cty.,* 262 Ind. 420, 317 N.E.2d 433 (1974). The California Supreme Court has limited *Jones* to situations where the disclosure would not cause self-incrimination. *Prudhomme v. Superior Court,* 2 Cal.3d 320, 85 Cal.Rptr. 129, 466 P.2d 673 (1970). Defendant does not claim, however, that his right against self-incrimination was violated in this case.

3. (a) A code on the sales receipt (Exhibit 2) showed it was issued during a part of the working day when JoAnn Loomis was not working.

(b) The testimony of another employee, Carol Fossen, revealed that it was her handwriting on "Exhibit 2."

874 (1976), we took the following quote from *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968):

> "[E]ach case must be considered on its own facts, and convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to very substantial likelihood of irreparable misidentification."

The trial court, after considering all the facts, including any discrepancies, found:

> That the witness, JoAnn Loomis, had ample opportunity to make a complete study of the defendant. That she had instructions from a previous employer to do just that and that under the circumstances of this very unusual situation, that she did indeed impress upon her mind the details of a description of the defendant so that she could from recollection make an identification of the defendant, whether she had later seen photographs or not.

We conclude as we did in the first appeal that the trial court did not abuse its discretion in finding that the in-court identification was supported by clear and convincing evidence of an independent origin.

■ Appellant also urges error in permitting the State to show independent origin because out-of-court identification cannot be shown when it was obtained under conditions that deprived the accused of his right to counsel. We met this issue in *State v. Miller,* supra, wherein we held that the right to counsel did not extend to a photographic lineup, citing *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), and we therein declined the defendant's invitation to construe our constitution to the contrary.

■ The appellant and one Steve Kaseman, who was charged with a homicide, were incarcerated together in the Brown County jail for a short period of time. As a result of this association, appellant volunteered information about Kaseman's case to the Brown County authorities while he was being held for trial. Appellant now claims that the State violated the rules of ethics by talking to him about that case without the presence of counsel. Before trial appellant moved to dismiss the information on the grounds the State had accepted a plea bargain agreement with defendant and then failed to perform its part of that agreement. Appellant challenges the trial court's denial of this motion.

The trial court heard testimony relating to the motion. According to this testimony, Jerry Lindberg, on May 6, 1977, at the request of the Attorney General, went to the Brown County sheriff's office to accompany appellant and the sheriff to an area, which according to appellant's information, was where Steve Kaseman had disposed of his victim's body. It appears from the evidence that agent Lindberg was specifically instructed not to talk about appellant's case; that no deals could be made with him; and that Lindberg in turn informed appellant that no deal or promises could be made. Other than appellant's pleading, there was nothing in the record to support a finding that appellant believed there was in fact a plea bargain. The trial court entered findings of fact and conclusion of law and found that the State made no promises or plea bargain agreements with appellant to dismiss charges in return for appellant providing information concerning the Kaseman case. Appellant does not challenge the trial court's findings. We cannot conclude from the record that the court's findings were clearly erroneous under SDCL 15–6–52(a).

■ Appellant suffered no prejudice as a result of his May 6, 1977, conversation. He neither pled guilty nor made any statements about his case in reliance on a claimed plea bargain. As was stated in the case of *People v. Taylor,* 27 N.Y.2d 327, 318 N.Y.S.2d 1, 266 N.E.2d 630 (1971):

> [T]he mere fact that the defendant has been arraigned or indicted on one charge does not prevent law-enforcement officials from interrogating him, in the absence of an attorney, about another and different crime—upon which he has neither been arraigned or indicted—. . . .

We conclude that neither appellant's rights nor the State's ethical responsibilities were violated.

■ Appellant's final assignment urges that the State wrongfully withheld an expert's report showing a fingerprint of an unknown person on the cash register that was the subject of the robbery. Appellant received the report six days before the trial. He argues that the failure of the State to provide him with this potentially exculpatory evidence in time to have the fingerprints examined by the Federal Bureau of Investigation violated his right to a fair trial under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). We do not agree.

In *United States v. Agurs,* supra, the Court stated that the rule of *Brady v. Maryland,* supra, applies in three different situations. Each involves a discovery by the defense, after trial, of information which had been known to the prosecution but unknown to the defense.

In the first situation, typified by *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury. . . .

The second situation, illustrated by the *Brady* case itself, is characterized by a pretrial request for specific evidence. In that case defense counsel had requested the extrajudicial statements made by Brady's accomplice, one Boblit. This Court held that the suppression of one of Boblit's statements deprived Brady of due process, noting specifically that the statement had been requested and that it was "material." A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.

\*    \*    \*    \*    \*    \*

The third situation in which the *Brady* rule arguably applies, typified by this case, therefore embraces the case in which only a general request for "*Brady* material" had been made.

In this case the trial court appointed defendant's choice as a fingerprint expert. On June 21, 1976, the trial court ordered production of all expert reports. The FBI report in question concluded that actually there were two fingerprints—one over top of the other—and that neither print possessed sufficient characteristics to identify anyone. The report also stated that one of the latent prints could not be defendant's and that it could not be concluded the other print was not defendant's. Appellant noticed his requests for disclosure, including the fingerprint analysis, on June 21, 1977. He was promptly provided with a copy of the report six days before trial. There was no suppression of evidence on the part of the State. Appellant did not move for a continuance, and made no motions until the time of trial.

In *United States v. Agurs,* supra, the Court held:

> For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose.

The record in this case leads us to conclude that the *Brady* situations expressed in *United States v. Agurs,* supra, do not apply, and since defendant was not deprived of a fair trial, there is no cause to set aside the verdict.

The verdict and judgment of the trial court are affirmed.

All the Justices concur.